## No. C-1214

**Margaret Adams v. John D. Leidholt, Richert E. Quinn, Jr., and Sisters of Charity of Leavenworth, a non-profit corporation, d/b/a Saint Joseph's Hospital**

(579 P.2d 618)

Decided May 30, 1978.                    Modification of opinion granted June 19, 1978.

Walter L. Gerash, for petitioner.

Yegge, Hall and Evans, Richard D. Hall, for respondent.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.


The petitioner, Margaret Adams, brought this action against Dr. John Leidholt, Dr. Richert Quinn, and the Sisters of Charity of Leavenworth doing business as St. Joseph's Hospital (the hospital), seeking damages for alleged malpractice. The trial court directed verdicts in favor of all defendants. The court of appeals affirmed the directed verdicts as to the two doctors, and reversed as to the hospital. *Adams v. Leidhol[d]t,* 38 Colo. App. 463, 563 P.2d 15 (1976). We granted certiorari, but since that time the hospital has settled the claims against it, and the case against Dr. Quinn has been dismissed. Therefore only Dr. Leidholt's liability remains at issue. We affirm the court of appeals' judgment in his favor.

On May 13, 1970, Dr. Leidholt performed hip joint replacement surgery on Mrs. Adams. Following surgery, Mrs. Adams' left leg was placed in a traction device to support and immobilize it. As part of the procedure, an elastic bandage was wrapped around her left leg from the ankle to just below the knee.

On May 14 and again on the morning of May 15, Dr. Leidholt examined Mrs. Adams. Both times he found that her leg was properly positioned in the traction device, that she was able to move her foot, and that she was recovering on schedule.

Sometime after noon on May 15, Dr. Quinn, a resident physician at the hospital rewrapped the elastic bandage. That evening, Mrs. Adams began to complain of pain in her left foot. The complaints were recorded in the "nurses notes" portion of the hospital record, but no action was initiated to alleviate the pain or determine its cause.

While examining the leg on the morning of May 16, Dr. Leidholt discovered that Mrs. Adams' peroneal nerve, which controls muscles that raise the foot and toes, was paralyzed. This nerve injury rendered Mrs. Adams unable to control those muscles and resulted in a "drop foot" condition. That condition requires that she wear a metal brace on her left leg in order to walk. Her disability is permanent.

Mrs. Adams' amended complaint asserted claims against Dr. Leidholt invoking the *res ipsa loquitur* doctrine as well as pleading negligence in the more traditional form. At trial the consensus of medical opinion was that the paralysis probably resulted from sustained pressure on the peroneal nerve occurring May 15 or May 16. According to the medical experts, the pressure was probably caused either by wrapping the elastic bandage too tightly or by improperly positioning the leg in the traction device. After all evidence had been presented, Mrs. Adams voluntarily

dismissed all her claims except those relying on *res ipsa loquitur*. The trial court then directed verdicts for the defendants as to the *res ipsa loquitur* claims.

■ The court of appeals upheld the directed verdict for Dr. Leidholt on the *res ipsa* claim because the evidence failed to show the injury resulted from any agency or instrumentality within Dr. Leidholt's control. We agree.

Plaintiff argues that the trial court should have allowed the case to go to the jury as to all defendants. She relies on *Ybarra v. Spangard,* 25 Cal.2d 486, 154 P.2d 687 (1945) and *La Rocco v. Fernandez,* 130 Colo. 523, 277 P.2d 232 (1954), in asserting that the usual *res ipsa* requirement that the instrumentality causing injury be in the defendant's control should be relaxed to apply the doctrine to multiple defendants.

■ In our view, however, neither case cited constitutes a precedent for the instant factual pattern. Here, the evidence clearly indicates that the injury occurred, not during the surgery, but several days afterwards. Moreover, it appears that the nerve injury was inflicted during a time period when Dr. Leidholt had no contact with the patient, and was caused by the acts of one or more persons for whom he had no vicarious responsibility.

In *Ybarra* a patient incurred a traumatic shoulder injury while under general anesthesia for an appendectomy. When none of the doctors or hospital employees involved in the operation came forward to explain how this peculiar result had occurred, the California court applied the *res ipsa loquitur* doctrine to require that they either explain or pay damages. The California Supreme Court held:

" . . . where a plaintiff receives unusual injuries while unconscious and in the course of medical treatment, all those defendants who had any control over his body or the instrumentalities which might have caused the injuries may properly be called upon to meet the inference of negligence by giving an explanation of their conduct." 154 P.2d at 691.

*Ybarra* has been explained as a judicial reaction to the refusal of members of the medical profession to testify against one another. *W. Prosser, Torts* 223 (4th Ed. 1971). But Dr. Leidholt's conduct in the instant case involved neither control of nor participation in the treatment at the time of injury. Nor did any medical witness decline to testify. *Ybarra,* therefore, is not in point.

In *La Rocco v. Fernandez, supra,* a three-car collision case, we did apply *res ipsa loquitur* to multiple defendants, but the facts are readily distinguishable. There each defendant driver to whom the doctrine was applied was in control, at the time of the collison, of one of the vehicles — the instrumentalities — by which the injuries were inflicted. Here, as stated, Dr. Leidholt had no contact with the injury-causing instrumentality at or about the time of the injury.

■ The plaintiff contends that Dr. Leidholt should be held vicariously liable by applying the "captain of the ship" doctrine. However, we agree with the court of appeals' holding[1] that the doctrine is not applicable. The "captain of the ship" rule, which is grounded in *respondeat superior,* has been applied in Colorado to impose liability on a surgeon for the negligence of hospital employees under his control and supervision during surgery. *Beadles v. Metayka,* 135 Colo. 366, 311 P.2d 711 (1957).

In *Beadles,* however, the doctor held liable was present in the operating room and had actual authority to direct and supervise others involved in the patient's care. Here, on the other hand, any injurious rewrapping of the bandage or repositioning of Mrs. Adams' leg occurred long after successful completion of the surgery and was done by hospital employees — either nurses or Dr. Quinn — out of the presence of Dr. Leidholt. Those employees were selected, hired, paid, controlled, and supervised by the hospital. Furthermore, although Dr. Leidholt was generally in charge of Mrs. Adams' post-operative care, and could order certain care and treatment for her, he had no control of which particular hospital employees would carry out his post-operative orders.

In short, the doctor had no right to control the actual hospital care in question. Therefore, there was no basis for finding a master-servant relationship through which Dr. Leidholt could be held vicariously liable for those not directly under his supervision. *Bernardi v. Community Hospital Association,* 166 Colo. 280, 443 P.2d 708 (1968).

Accordingly, the judgment of the court of appeals is affirmed.

---

[1] 563 P.2d at 19.