**Kayla YOUNG, a minor, By and Through her parents and next friends, Charlotte YOUNG and Carl Young, Plaintiff-Appellant,**

v.

**Stephen CARPENTER, M.D., Defendant-Appellee.**

**No. 82CA1362.**

Colorado Court of Appeals, Div. I.

Aug. 2, 1984.

Rehearing Denied Aug. 30, 1984.

Certiorari Denied Jan. 14, 1985.

Hoffman & McDermott, Gerald P. McDermott, William J. Hansen, Denver, for plaintiff-appellant.

Pryor, Carney & Johnson, P.C., Thomas L. Roberts, Susan T. Smith, Englewood, for defendant-appellee.

BABCOCK, Judge.

In this medical malpractice action, plaintiff, Kayla Young, by her parents, Charlotte and Carl Young, appeals from an adverse judgment entered upon a jury verdict in favor of defendant, Stephen Carpenter, M.D. The primary issue presented is whether the trial court erred in refusing to instruct the jury on the theory of vicarious liability. In addition, plaintiff seeks reversal of the judgment entered upon her claim of direct negligence asserting juror bias. We affirm in part, reverse in part, and remand for new trial.

Shortly after admission to St. Joseph Hospital for the delivery of Kayla, Mrs. Young was examined by defendant, the attending physician, who determined that her delivery would be a vaginal delivery of an average sized infant. Several hours later, Mrs. Young's labor arrested, and the possibility of a caesarean section was discussed by defendant with the Youngs. This possibility was dismissed approximately two hours later when labor resumed. A precipitous delivery ensued thirty minutes thereafter.

Dr. Keeler, a licensed physician and third year obstetric resident, in response to the emergency call for a sterile package for precipitous delivery, went immediately to the labor room. Kayla's head was crowning. Accordingly, he delivered her head. However, it retracted against the perineum, which indicated shoulder dystocia, i.e., impaction of the infant's shoulder behind the mother's pubic bone. After verifying the existence of this condition, Dr. Keeler attempted routine maneuvers to release the shoulder and deliver Kayla.

At some time during Dr. Keeler's attempt to deliver Kayla, defendant entered the labor room, inquired as to what had occurred, then took over. After repositioning Mrs. Young on the bed, he repeated the routine traction maneuver previously performed by Dr. Keeler. Despite the addition of external suprapubic pressure, this maneuver proved again to be unsuccessful. Defendant finally delivered Kayla by extracting her free arm which released the impacted shoulder. As a result of this difficult delivery, Kayla sustained a spinal nerve injury which resulted in permanent partial paralysis of the right shoulder and arm.

This action was commenced, in which it was alleged that Kayla's injury was caused by the use of excessive traction during delivery and naming Kaiser-Permanente Medical Group, St. Joseph Hospital, Dr. Keeler, Dr. Pfeiff (who provided prenatal care), and Dr. Carpenter as defendants. Prior to trial, claims asserted against certain defendants were bifurcated, and settlements were negotiated with several of the

other defendants, including Dr. Keeler, leaving Dr. Carpenter the sole defendant.

### A.

Several days prior to settlement of the claims asserted against Dr. Keeler, the trial court granted his motion for summary judgment apparently on the basis that plaintiff had failed to provide expert testimony with respect to Dr. Keeler's alleged negligence. Pursuant to the settlement agreement, plaintiff, although contending that the trial court's ruling was erroneous, see Smith v. Hoffman, 656 P.2d 1327 (Colo. App.1982), waived the right to appeal the grant of summary judgment and reserved the right to pursue her claims against defendant. For the first time on appeal, defendant contends that the granting of the summary judgment bars plaintiff's assertion of Dr. Keeler's alleged negligence as a means of imposing vicarious liability on defendant. We disagree.

■ Following the granting of the summary judgment for Dr. Keeler and subsequent acceptance of the settlement agreement, defendant amended his answer to include the defense of negligence of third parties. In addition, he reserved both the right to call any witnesses endorsed by those defendants who were no longer parties to the action and his rights, if any, under the Uniform Contribution Among Tortfeasors Act. At no time during trial, or in his post-trial motions, did defendant interpose the defense now asserted; consequently, the trial court was not given an opportunity to address it. Accordingly, defendant cannot now avoid plaintiff's claims based on vicarious liability on this basis. Boulderado Motors, Inc. v. Peterson, 100 Colo. 243, 66 P.2d 1271 (1937).

### B.

Having concluded that the imposition of vicarious liability is not barred as a matter of law, we must determine whether there exists sufficient evidence to support plaintiff's claim based on this theory.

■ The "captain of the ship" doctrine, which is grounded in respondeat superior, has been applied in Colorado to impose vicarious liability on a surgeon for the negligence of hospital employees under his control and supervision during surgery. Adams v. Leidholt, 195 Colo. 450, 579 P.2d 618 (1978); Beadles v. Metayka, 135 Colo. 366, 311 P.2d 711 (1957). A crucial determination in establishing the applicability of the doctrine is the time when the surgeon assumes supervision and direction in the operating room. Beadles v. Metayka, supra. This question is not a matter of law; rather, it is a question of fact for the jury to determine. Beadles v. Metayka, supra.

The trial court, in refusing to submit the case to the jury on the theory of vicarious liability, stated that it believed "an added factor to the captain of the ship doctrine should be that the attending physician, in this case Dr. Carpenter, cannot have imposed upon him the captain of the ship doctrine until such time as he is ready to take command." And, it concluded that defendant could not have been ready to assume control until the nurse had informed him of the details of the delivery.

■ The evidence was conflicting as to the exact time when defendant entered the labor room and inquired as to case status. However, defendant admitted being present during Dr. Keeler's attempt to deliver Kayla following discovery of the shoulder dystocia. In addition, there was evidence that defendant, as the attending physician and a staff member of St. Joseph Hospital, was charged with the authority to supervise and instruct residents on the obstetrical floor. Finally, conflicting expert testimony was presented as to whether Dr. Keeler or defendant was negligent and as to whether Dr. Keeler's or defendant's negligence was the cause of plaintiff's injury. Under these circumstances, plaintiff's claim based on vicarious liability should have been submitted to the jury. Adams v. Leidholt, supra; Beadles v. Metayka, supra; Kitto v. Gilbert, 39 Colo.App. 374, 570 P.2d 544 (1977).

Defendant urges us to affirm the trial court's ruling on the basis that the captain of the ship doctrine is inapplicable to the present case because the delivery took place in the labor room rather than in the delivery room. This distinction is spurious.

The precipitous nature of the delivery required that it be conducted in the labor room rather than in the delivery room. The situs of the delivery, however, neither diminishes the responsibility of the attending physician nor obviates the possibility of a difficult delivery. Moreover, the imposition of vicarious liability for negligent acts of a resident is dependent upon the existence of a master-servant relationship; it is not dependent upon the situs of the alleged negligent act. *See Bernardi v. Community Hospital Ass'n*, 166 Colo. 280, 443 P.2d 708 (1968).

### C.

Plaintiff also contends that the adverse judgment entered upon her direct negligence claim against defendant must be reversed because the trial court erred in refusing to excuse for cause a juror who expressed partiality and bias. We disagree.

Maximum liberty is given to the trial court in assessing the impartiality of jurors. *Hanes v. People*, 198 Colo. 31, 598 P.2d 131 (1979). "A juror who admits an opinion on the merits does not bind the court by his assertion that he can or cannot disregard it. The trial judge may very properly be convinced that the juror is seeking or avoiding service, or that he magnifies or minimizes his ability...." *McGonigal v. People*, 74 Colo. 270, 220 P. 1003 (1923).

Here, in addition to expressing partiality and bias, the challenged juror expressed extreme concern about a previously scheduled vacation in Sante Fe, New Mexico. The trial court, in assessing the juror's impartiality, determined that she was seeking to avoid jury service in order to take her vacation. Because the record supports this finding, we cannot conclude that the trial court's action on this issue constituted an abuse of discretion. *Haines v. People, supra; McGonigal v. People, supra*.

The judgment of the trial court is reversed, and the cause is remanded for new trial on the theory of vicarious liability. The judgment of the trial court is affirmed as to plaintiff's claim of direct negligence against defendant.

PIERCE and STERNBERG, JJ., concur.