Melvin **COFFEE, Individually and d/b/a Melvin Coffee and Associates, P.C., Plaintiff-Appellee and Cross-Appellant,**

v.

Robert D. **INMAN, John J. Flynn, Jr., and H. Christopher Clark, Individually, and d/b/a Inman & Flynn, P.C., Defendants-Appellants and Cross-Appellees.**

No. 83CA0885.

Colorado Court of Appeals, Div. I.

Sept. 4, 1986.

Rehearings Denied Oct. 16, 1986.

Pendleton & Sabian, P.C., Richard F. Hennessey, Denver, for plaintiff-appellee and cross-appellant.

Quiat, Bucholtz, Bull & Laff, P.C., Alan H. Bucholtz, Denver, for defendants-appellants and cross-appellees.

ENOCH, Chief Judge.

This case concerns certain disputes which arose between former members of a law firm after the withdrawal of plaintiff, Melvin Coffee, from the firm. Defendants, Robert D. Inman, John J. Flynn, Jr., and H. Christopher Clark, individually and doing business as Inman & Flynn, P.C., appeal a jury verdict in favor of plaintiff in which defendants, individually and as a professional corporation, were found liable for breach of contract and wrongful eviction. Plaintiff cross-appeals, claiming the jury's damage award of $1 on his claim for wrongful eviction was inadequate and his claim for additional damages under the Colorado Wage Claim Act should have been submitted to the jury. We affirm in part and reverse in part.

One of the main issues on appeal is whether plaintiff is entitled to a distributive share of attorney's fees allowed by the bankruptcy court for services performed by the individual defendants Inman and Flynn. These services were performed before plaintiff withdrew from the firm, but the fees were not received until after plaintiff's withdrawal.

Plaintiff and defendants Inman and Flynn were shareholders, officers, directors, and employees of the law firm, incorporated in 1969 as a professional corporation. To determine allocation of expenses and compensation, the firm adopted a seven-year formula to share income by which fees were credited to the lawyers on the basis of 30% for obtaining the business, and 70% for performing the work. The respective percentages were to be applied to the amount the lawyers agreed to distribute each month as salary, leaving the balance in the account to pay the firm's operating expenses.

At the time the professional corporation was formed, each lawyer signed an employment agreement. The agreement provided, in part, that the lawyers had no interest in the accounts receivable of the corporation and that the relationship between the corporation and the lawyer was that of an employer to an employee. It contained no provision for continued distribution of fees to a withdrawing lawyer.

In 1972, defendants Inman and Flynn were appointed by a referee to serve as attorneys for a receiver in bankruptcy. Plaintiff's name was included in the appointing order but representation of the receiver was handled entirely by defendants Inman and Flynn.

Defendants Inman and Flynn represented the receiver from June of 1972 until October of 1974, when there was an adjudication of bankruptcy, and an election to appoint a trustee was held. They also rep-

resented the appointed trustee whose election was challenged.

The claims filed against the bankrupt's estate were substantial and the litigation complex. Defendants Inman and Flynn applied to the bankruptcy court for interim fees quarterly during the receivership, receiving $40 an hour for their representation, and they anticipated that they would eventually be entitled to apply for a final fee for their services from 1972 to 1974.

During 1977 and early 1978, defendants Inman and Flynn experienced problems with the bankruptcy court in receiving approval of their fee applications, and a three-day hearing was set to review the interim fees already paid and to consider subsequent interim fees requested by them from September 1977 forward. Both lawyers feared the bankruptcy court would not only refuse to award them the requested interim fees, but would surcharge the firm for the fees already disbursed because it was dissatisfied with their representation of the trustee. The bankruptcy court ultimately ruled in their favor, and the interim fees were received by September of 1978.

While the bankruptcy litigation was progressing, defendants Inman and Flynn and plaintiff discussed the problems that the firm was experiencing, and, in February of 1978, plaintiff informed defendants Inman and Flynn that he was resigning from the firm. The three lawyers had several meetings to discuss future arrangements, and from those discussions, plaintiff prepared a "Memorandum of Agreements" dated March 1, 1978, which all three parties signed, none of the parties designating a corporate status.

Thereafter, defendants Inman and Flynn formed a new professional corporation, defendant Inman & Flynn, P.C., and plaintiff formed a partnership, Coffee & Robinson, with another lawyer.

The Memorandum of Agreements included two provisions relevant to this action: "3. The accounts receivable, both billed & unbilled, of Inman, Flynn & Coffee will be scheduled. Those receivables will continue to be billed by Inman & Flynn as the successor corporation. As those accounts receivable are received, they will be used solely to first, pay the obligations of Inman, Flynn & Coffee which are attributable to periods before March 1, 1978, and second, any balance will be shared on the formula basis. . . .

"7. Coffee and his firm shall have the right to use the office space, commonly used furniture and fixtures, leasehold improvements and the phone service now used by Coffee & Robinson so long as Inman & Flynn or John [Flynn] or Bob [Inman] or any law firm with which they are associated maintain the leasehold and telephone system."

For about two years, the parties shared the office space and compensation was paid for past work based on the Memorandum of Agreements. The interim fees received on the bankruptcy account by defendants Inman and Flynn in September of 1978, as compensation for time spent up to February 28, 1978, were included and divided by the parties as "accounts receivable" according to the Memorandum of Agreements, plaintiff receiving his last payment in October of 1978. Defendants Inman and Flynn had not at that time filed an application for the final fee.

In the spring of 1980, after a dispute involving plaintiff's occupancy of his portion of the office space, defendant Inman & Flynn, P.C., initiated eviction proceedings against plaintiff. A letter dated March 13, 1980, and signed by defendants Inman and Flynn and defendant H. Christopher Clark—a shareholder of defendant Inman & Flynn, P.C., as of February 1, 1979—demanded that plaintiff move by April 15, 1980, or face eviction. Each of the defendants signed as individuals without reference to their corporate status.

Plaintiff was then served with a notice to quit dated March 21, 1980, and signed by defendant Inman in his capacity as president of the professional corporation, demanding possession of the premises on or before April 1, 1980. A "Memo to All Occupants of Suite 1040," dated March 31,

1980, and again signed by defendant Inman in his capacity as president, provided that effective April 1, plaintiff's calls would be referred to his home telephone, his additional telephone lines would be cancelled, his share of supplies would be placed in a storage box and no new supplies would be ordered for him, his files would be placed in a storage facility effective April 4, and offices occupied by him "will keep their doors closed at all times."

On April 1, 1980, plaintiff commenced this action to enjoin the eviction and for damages, claiming a breach of the Memorandum of Agreements based on defendants Inman and Flynn's actions, *i.e.*, the letter, the notice to quit and the memo.

On April 21, 1980, plaintiff and defendants Inman and Flynn entered into an agreement to "resolve a portion of the dispute or potential dispute represented by said civil action." Plaintiff agreed to vacate his office space by August 1, 1980, and to have "no right or claim to possession or occupancy" from that date. Defendants Inman and Flynn agreed to pay plaintiff's reasonable moving costs not to exceed $1,000. The agreement further provided that: "Except as expressly agreed to herein, none of the parties waive any rights or claims in conjunction with said civil action." Plaintiff vacated the premises and defendants Inman and Flynn paid his moving expenses.

While plaintiff's action was still pending, he discovered that, in December 1979, defendants Inman and Flynn had received $147,884 as a final fee for the bankruptcy litigation of 1972 to 1974. In January of 1981, plaintiff filed an amended complaint, claiming an additional breach of the Memorandum of Agreements because defendants had failed to pay him a share of that final fee earned prior to but paid after the date of his termination, and naming Clark as an additional defendant. Plaintiff alleged that the final fee in bankruptcy was an "unbilled account receivable" and that, therefore, he was entitled to a percentage of that fee under the March 1, 1978, agree-

ment. He also retained his claim for wrongful eviction.

Defendants moved to dismiss the action as to all the individually named defendants, claiming that they were only liable in their corporate status as "defendant Inman and Flynn, P.C." Defendant Clark moved to dismiss because he was not a shareholder at the time of the March 1, 1978, agreement and did not sign that agreement. Defendants also sought dismissal of the damage claim for wrongful eviction or, in the alternative, sought to preclude any evidence of acts or conduct relating to that claim because the April 21, 1980, agreement settled any further claim by plaintiff for damages for wrongful eviction. Defendants also filed a motion for continuance, arguing that, because they had only recently received plaintiff's notes and records and could not review them in time to prepare properly for trial, a continuance was necessary. At the same time, they filed a motion *in limine* to preclude all expert testimony on the definition of, and what constitutes, "accounts receivable." The trial court denied all motions.

Trial was held to a jury, which returned a verdict for plaintiff against all defendants, individually and doing business as defendant Inman & Flynn, P.C., for $50,073 on the breach of contract claim and for $1 on the wrongful eviction claim. Defendants requested, and the court granted, an extension of time to file post-trial motions. Plaintiff did not request an extension of time to file any post-trial motions.

## I.  DEFENDANTS' APPEAL

### A.  *Personal Liability*

Defendants contend that the trial court erred in refusing to grant their motions for partial summary judgment for directed verdict and for judgment notwithstanding the verdict in favor of them individually because they cannot be held personally liable for obligations of the professional corporation. We agree only as to defendant Clark, and therefore, the judgment as to his personal liability is reversed. We affirm, how-

ever, the judgment holding defendants Inman and Flynn personally liable.

■ Because defendant Clark was not a shareholder of defendant Inman & Flynn, P.C. at the time the Memorandum of Agreements was executed, and because he did not sign that agreement, he cannot be held personally liable for a breach thereof based on failure to distribute to plaintiff a share of the proceeds of the final fee. *See Barbara's Lighting Center, Inc. v. Churchill,* 35 Colo.App. 439, 540 P.2d 1110 (1975).

Though Clark signed in his individual capacity the letter demanding plaintiff move or face eviction, that fact is insufficient alone to impose on him personal liability for a breach of the 1978 agreement.

■ Defendants Inman and Flynn, however, were officers and shareholders of the professional corporation, and they did sign the Memorandum of Agreements as well as the eviction letter. Generally, shareholders may not be held personally liable for corporate obligations. *See Fink v. Montgomery Elevator Co.,* 161 Colo. 342, 421 P.2d 735 (1966). However, under the circumstances here, in which the parties signed without indicating they were signing for the corporation, personal liability should attach. *Greenlawn Sprinkler Corp. v. Forsberg,* 170 Colo. 286, 461 P.2d 22 (1969); *Sago v. Ashford,* 145 Colo. 289, 358 P.2d 599 (1961).

### B. Request for Additional Witnesses

Defendants next argue that the trial court erred in precluding the testimony of additional witnesses some 13 days before trial. We disagree.

C.R.C.P. 121 § 1–18(1)(a)(V) requires that each party, at least 45 days prior to trial, file a trial data certificate which lists all witnesses who may be called at trial. "New witnesses ... may be added only if the need to do so was not foreseeable at the time of filing of the trial data certificate, and then only if it will neither prejudice other parties nor necessitate a delay of the trial starting date." C.R.C.P. 121

§ 1–18(1)(a)(XII)(c). *See also* Second Judicial District Rule 14(b).

■ Here, the need for additional testimony *was* reasonably foreseeable at the time the trial data certificate was filed. Defendants' additional witnesses were to testify concerning whether the final fee for work done by defendants Inman and Flynn in the bankruptcy litigation was an "account receivable" to be divided according to the Memorandum of Agreements. This key issue was certainly known to defendants when they filed their trial data certificate, and we perceive no abuse of discretion in the trial court's preclusion of additional witnesses to testify on that issue.

### C. Limitation of Defendant Inman's Testimony

■ Defendants contend that the trial court erred in precluding defendant Inman from testifying as to why the original employment agreement between the parties, entered into when the professional corporation was formed, did not include a provision for continued distribution of fees to a voluntarily withdrawing attorney. We disagree.

The issue at trial was whether the Memorandum of Agreements, not the original employment agreement, was intended to allow plaintiff to share in the final bankruptcy fee. The Memorandum of Agreements provided for continued distribution of accounts receivable to plaintiff, and was entered into because plaintiff was withdrawing from the firm. As such, it superseded the original employment agreement, and the absence of such a provision in that agreement was irrelevant. *See* CRE 402.

### D. Motion to Preclude Expert Testimony by Certified Public Accountants

Defendants contend that the trial court erroneously denied their motion in limine to preclude testimony by certified public accountants concerning the definition of "accounts receivable." We disagree.

A court's decision to allow a witness to testify as an expert will not be disturbed without a clear showing of abuse of discretion. *White v. People,* 175 Colo. 119, 486 P.2d 4 (1971). In addition, the court has broad discretion in determining the scope of that testimony. *See People v. Davis,* 187 Colo. 16, 528 P.2d 251 (1974).

We find no abuse of discretion by the court in its determination that the accountants' "scientific, technical, or other specialized knowledge" would help the jury to understand the term "accounts receivable." *See* CRE 702. The court gave both parties the opportunity to present an accountant whose testimony supported their respective views. Plaintiff offered expert testimony to the effect that, when the Memorandum of Agreements was executed, the final bankruptcy fee was an account receivable because it was income due in exchange for services rendered, contingent only as to amount. Defendants introduced rebuttal testimony to the effect that the fee was not an account receivable because it was merely a possibility when the Memorandum of Agreements was executed, and, until the bankruptcy court entered a final attorneys' fee order, defendants Inman and Flynn had no right to payment.

### E. Sua Sponte Limitation of Expert Testimony by Attorney Witnesses

Defendants argue that the trial court erred by ruling, *sua sponte,* that neither party's attorney witnesses could testify as to the definition of "accounts receivable," or whether the final bankruptcy fee constituted, under usual law office procedure, an account receivable. We agree that the court should have allowed testimony by attorneys qualified as experts on the issue, but we do not find the court's refusal to allow the attorney testimony reversible error.

Additional expert testimony as to what constituted "accounts receivable" in the context of the subject bankruptcy litigation would have been merely cumulative; accordingly, it was not reversible error to

exclude it. *See Danburg v. Realties, Inc.,* 677 P.2d 439 (Colo.App.1984).

### F. Testimony by An Attorney Witness for Plaintiff

Defendants contend the trial court erred in ruling that an attorney witness for plaintiff could testify as to how fees were disbursed when one of the partners in the witness' law firm withdrew. We agree that the testimony was not relevant to the question whether the final bankruptcy fee in this case was an account receivable under the parties' Memorandum of Agreements. *See* CRE 401 and 402. However, under the circumstances of this case, the admission of this irrelevant testimony is not reversible error. *See People v. Carlson,* 677 P.2d 390 (Colo.App.1983).

Here, the impact of such testimony was not highly prejudicial or damaging to defendants. Even without the testimony, the evidence taken as a whole overwhelmingly supported the jury's conclusion that the final fee, like the interim fee, was an "account receivable" to be divided by the parties according to the Memorandum of Agreements. Therefore, we hold that the court's error in admitting such testimony was harmless. *See* CRE 103(a).

### G. Damages Claim for Wrongful Eviction

Defendants contend that the trial court erred in refusing to dismiss plaintiff's claim for wrongful eviction. They claim that any rights he had as to that claim were merged into and settled by the April 21, 1980, agreement. We disagree.

In the agreement, the parties desired to "resolve a *portion* of the dispute or potential dispute represented by said civil action." (emphasis supplied) The agreement further provided that: "[E]xcept as expressly agreed to herein, none of the parties waive any rights or claims in conjunction with said civil action." The "civil action" necessarily referred to plaintiff's claim for wrongful eviction; there were no other claims associated with the action un-

til January of 1981 when plaintiff amended his complaint and added his claim for a share of the final bankruptcy fee.

The only reasonable interpretation of the agreement, given that it was executed before any of the parties were aware of any claims unrelated to the eviction claim, is that it was entered into by the parties merely to avoid disruption of their respective law practices. To accomplish that purpose, plaintiff agreed to vacate his office space and claim no right to occupy the space from April 15th on; he did not agree to forego any damages claim based upon the right to occupancy or possession of the space which had accrued prior to that date. Thus, the viability of his wrongful eviction damages claim was unaffected by the agreement.

### H. Plaintiff's Motion for Limited New Trial

■ Defendants' final contention is that the trial court erred in refusing to strike plaintiff's motion for limited new trial because only defendants requested and were granted an extension of time to file post-trial motions, and therefore, plaintiff's motion, filed more than 15 days after entry of judgment, was filed untimely. Citing *Liberty Mutual Insurance Co. v. Safeco Insurance Co.*, 679 P.2d 1115 (Colo.App. 1984), they argue that because the court is deprived of jurisdiction by a party's failure to file a motion for new trial within the time prescribed by C.R.C.P. 59, or as extended by the court, the court here had no jurisdiction to consider plaintiff's motion for limited new trial. Under the circumstances at issue here, we do not agree.

The court granted defendants an extension of time, and they filed a post-trial motion within that time. Because the court still retained jurisdiction over the action, it could consider whether it had intended to grant both parties an extension. The court determined that its grant of an extension to file post trial motions was intended to apply to plaintiffs as well as defendants. We find no error in that ruling.

We have considered defendants' remaining contentions and conclude that they are without merit.

## II. PLAINTIFF'S CROSS–APPEAL

### A. Nominal Damages

■ Plaintiff first argues that the jury's award of only nominal damages on his claim for wrongful eviction was inadequate in light of his evidence establishing that damages amounted to almost $8000. We disagree.

The amount of damages to be awarded is within the sole province of the jury, and an award will not be disturbed unless it is completely unsupported by the evidence in the record. *Meiter v. Cavanaugh*, 40 Colo. App. 454, 580 P.2d 399 (1978). We cannot conclude that the nominal damage award of $1 was completely unsupported by the record, and therefore, we will not disturb the award. *Cf. Bohlender v. Oster*, 165 Colo. 164, 439 P.2d 999 (1968).

### B. Wage Claim

■ Plaintiff next asserts that the trial court erred in ruling that his claim for a share of the final bankruptcy fee was not an action for compensation under the Colorado Wage Claim Act, § 8–4–101, et seq., C.R.S. We perceive no error.

Section 8–4–104(3), C.R.S., of the Act provides:

"If an employer refuses to pay wages or compensation in accordance with subsection (1) of this section upon request by the employee and without a good-faith legal justification for such refusal, the employer is liable to the employee, in addition to the compensation legally proven to be due, in an amount equal to fifty percent thereof as penalty for such refusal."

We agree with the trial court's conclusion that plaintiff is not entitled to the 50% penalty specified in this statute for two reasons. First, plaintiff's share of the final fee was neither "wages" nor "compensation" within the meaning of the statute, and therefore, the Wage Claim Act does

not apply to his recovery of part of the fee. *See* § 8–4–101(9), C.R.S. Section 8–4–101(9), C.R.S., of the Wage Claim Act defines "wages" or "compensation" as "all amounts for labor or services *performed by employees*" (emphasis supplied), and it is undisputed that plaintiff did not perform the work for which defendants Inman and Flynn received the fee. Secondly, defendant Inman & Flynn, P.C., had a "good-faith legal justification" for refusing to pay plaintiff, *i.e.*, defendants Inman and Flynn, acting for the corporation, did not believe the final fee constituted an "account receivable." The fact that the jury found in favor of plaintiff on that issue does not negate the validity of their position as a litigable question. Thus, the trial court did not err in concluding that plaintiff could not maintain his claim for compensation under the Wage Claim Act.

That portion of the judgment imposing personal liability on defendant Clark is reversed. In all other respects, the judgment is affirmed.

STERNBERG and BABCOCK, JJ., concur.