Stephen CARPENTER, M.D., Petitioner,

v.

Kayla YOUNG, a minor, by and through her parents and next friends, Charlotte YOUNG and Carl Young, Respondents.

No. 88SC158.

Supreme Court of Colorado, En Banc.

May 15, 1989.

Pryor, Carney and Johnson, Susan T. Smith, Englewood, for petitioner.

McDermott, Hansen, Anderson & Reilly, William J. Hansen, Denver, for respondents.

ERICKSON, Justice.

We granted certiorari to review the court of appeals decision in *Young v. Carpenter,* 757 P.2d 148 (Colo.App.1988), which reversed the trial court's entry of summary judgment in favor of petitioner Stephen Carpenter, M.D. We reverse and return the case to the court of appeals with directions to reinstate the entry of summary judgment.

### I.

In this medical malpractice case, Charlotte and Carl Young, individually and on behalf of their daughter Kayla, brought suit against Stephen Carpenter, M.D., James Pfeiff, M.D., Forrest M. Keeler, M.D., Ren Imai, M.D., Colorado Permanante Medical Group, and St. Joseph Hospital, Inc. for injuries sustained by Kayla at birth. On August 30, 1979, Charlotte Young was admitted to St. Joseph Hospital to give birth to Kayla. Mrs. Young was examined upon admission by her attending physician, Dr. Stephen Carpenter, who determined that Young would vaginally deliver an average-sized infant. Mrs. Young was brought to the labor room and her delivery was progressing normally when labor suddenly arrested. Dr. Carpenter informed the Youngs that a cesarean section might be required to deliver the infant. Any potential need for a cesarean section soon vanished when Mrs. Young resumed labor. Approximately thirty minutes after labor resumed, Kayla was precipitously delivered.

During the delivery, the nurses in the labor room made an emergency call for a "precip pack," a sterile package containing instruments used in a precipitous delivery. Dr. Keeler, a third year obstetrics resident, responded to the call and upon entering the labor room noted that Kayla's head was crowning. Since there was no time to transport Mrs. Young to the delivery room, and Dr. Carpenter was not yet present, Dr. Keeler began to deliver Kayla. He performed an episiotomy and delivered the head. The head quickly retracted against the perineum, indicating that Kayla's shoulder was impacted behind her mother's pubic bone. Dr. Keeler diagnosed the baby's condition as shoulder dystocia,[1] and then attempted to dislodge the shoulder by rotating it. When this proved unsuccessful, he then applied downward and outward traction to the baby's head.

While Dr. Keeler was attempting to deliver Kayla, Dr. Carpenter entered the room and assumed control of the delivery. He repositioned Mrs. Young, directed Dr. Keeler to apply suprapubic pressure, and repeated Keeler's traction maneuver. Despite these steps, Kayla still was not delivered. Finally, after several other unsuccessful traction maneuvers, Dr. Carpenter extracted Kayla's free arm, thereby dislodging the impacted shoulder, and delivered her. As a result of this difficult delivery, Kayla suffered a brachial plexus injury which caused permanent partial paralysis of her right shoulder and arm.

On January 16, 1981, the Youngs filed suit on Kayla's behalf in the Denver District Court alleging that Kayla's injuries were caused in part by Keeler's and Carpenter's excessive use of traction on her head and neck. In regard to Dr. Carpenter, the respondents asserted both a direct negligence claim and a respondeat superior

---

**1.** Shoulder dystocia is a complication of childbirth that occurs when the infant's shoulder or shoulders are impacted inside the mother's pelvic structure. The complication typically does not become apparent until after the infant's head is delivered. *See* Dorland's Illustrated Medical Dictionary 415 (26th ed.1981); Stedman's Medical Dictionary 436 (24th ed.1982).

claim based upon Dr. Keeler's alleged negligence.

Dr. Keeler moved for summary judgment, arguing that the respondents had failed to present any expert testimony alleging Keeler to have been negligent. The district court, over respondents' objection, granted Keeler's motion for summary judgment and dismissed all claims against him with prejudice. Three days later, the Youngs entered into a settlement agreement with all defendants except Dr. Carpenter. In consideration of releasing Dr. Pfeiff and Colorado Permanente from liability, the Youngs received $70,000. The settlement further provided that in consideration of an additional $45,000, the Youngs released their claims against St. Joseph Hospital and waived their right to appeal the summary judgment order granted in Keeler's favor. The agreement expressly reserved the right to sue Carpenter, stating that it

> shall not in any way prejudice, or operate as a release or waive[r] of, plaintiffs' remaining claims and causes of action and rights of appeal against the defendant Stephen Carpenter, M.D., which claims, causes of action and rights of appeal are expressly reserved herein.

The agreement was approved, and the district court dismissed with prejudice the claims against Keeler, St. Joseph Hospital, Colorado Permanente Medical Group, and Pfeiff.

Following the settlement, a four-week jury trial was held on the respondents' claims against Dr. Carpenter. At the close of the evidence, the trial court, after extensive argument, declined to give the jury an instruction on vicarious liability under a "captain of the ship" doctrine.[2] The jury returned a verdict finding in favor of Carpenter on the direct negligence claim. The respondents appealed the case, claiming that the trial court erred in not submitting the vicarious liability issue to the jury. Dr. Carpenter defended by arguing that the

trial court's refusal to submit the issue was proper and that the grant of summary judgment in Keeler's favor collaterally estopped respondents from alleging vicarious liability based upon Keeler's negligence.

On August 2, 1984, the court of appeals reversed the trial court and held that the vicarious liability issue under the "captain of the ship" doctrine should have been submitted to the jury. *Young v. Carpenter*, 694 P.2d 861, 863 (Colo.App.1984). The court of appeals, citing *Boulderado Motor Homes, Inc. v. Peterson*, 100 Colo. 243, 66 P.2d 1271 (1937), rejected Carpenter's collateral estoppel argument because he had failed to assert it at the trial level, raising it for the first time on appeal. *Young v. Carpenter*, 694 P.2d at 863. The court then remanded the case for retrial on the issue of vicarious liability only. *Id.* at 864.

On remand, the trial court allowed Carpenter to amend his answer to assert the affirmative defenses of res judicata and collateral estoppel. Both respondents and Carpenter then moved for summary judgment. Carpenter argued that:

> Plaintiff's vicarious liability claim against Dr. Carpenter necessarily rests upon a finding of negligence on the part of Dr. Keeler. However, the unappealed summary judgment ruling by the trial court in Dr. Keeler's favor was and is a final adjudication on the merits of all claims of negligence against Dr. Keeler and, as such, collaterally estops plaintiff from relitigating the issue of Dr. Keeler's negligence in this case. Since there is already a judgment in Dr. Keeler's favor, there can be no liability on Dr. Carpenter's part for the conduct of a loaned servant [Dr. Keeler] previously found by the trial court not to be liable to the plaintiff.

The court, stating no grounds for its ruling, granted Carpenter's motion while denying respondents'.

---

**2.** The "captain of the ship" doctrine is grounded in respondeat superior liability and has been used in Colorado to impose vicarious liability upon a surgeon for the negligence of hospital employees under his control and supervision during surgery. *See, e.g., Adams v. Leidholt*, 195 Colo. 450, 453, 579 P.2d 618, 620 (1978); *Beadles v. Metayka*, 135 Colo. 366, 370–71, 311 P.2d 711, 713–14 (1957).

The respondents again appealed and the court of appeals reversed the trial court. *Young v. Carpenter,* 757 P.2d 148 (Colo. App.1988). The court of appeals rejected Carpenter's collateral estoppel argument, holding that the summary judgment order for Keeler was not a final judgment since it had not been certified pursuant to C.R.C.P. 54(b) as final and appealable. *Id.* at 150. The court also concluded that Keeler's summary judgment order merged into and was superseded by the subsequent settlement agreement between the Youngs and all defendants but Carpenter. *Id.* The judgment was therefore extinguished and the settlement agreement controlled. Because the settlement agreement reserved respondents' claims against Carpenter, the trial court's entry of summary judgment in Carpenter's favor "contravened the intent of the parties as expressed in the settlement agreement" and was therefore reversible error. *Id.* The case was remanded for trial and Carpenter petitioned this Court for a writ of certiorari.

## II.

We granted certiorari to review the court of appeals finding that C.R.C.P. 54(b) certification is required before a judgment can be given collateral estoppel effect and that the summary judgment order entered in Keeler's favor merged into and was extinguished by the settlement agreement.

## A.

Generally, a summary judgment exonerating an employee of negligence which is not appealed is a dismissal on the merits and bars a subsequent respondeat superior action against the employer. *See Sanchez v. Rice,* 40 Colo.App. 481, 483, 580 P.2d 1261, 1262 (1978); *Flournoy v. Sayles,* 37 Colo.App. 67, 70, 544 P.2d 649, 652 (1975). Such a bar arises by virtue of collateral estoppel and consequently applies only if the judgment is final.[3] *See, e.g., Association for Retarded Citizens in Colorado v. Frazier,* 517 F.Supp. 105, 124–25 (D.Colo. 1981); *People v. Hearty,* 644 P.2d 302, 312 (Colo.1982). According to the court of appeals, the summary judgment order granted in Keeler's favor was not final under C.R.C.P. 54(b) and therefore could not supply the basis for Carpenter's collateral estoppel claim.

■ The issue squarely presented is whether a judgment is final for purposes of collateral estoppel if it is not certified as final under C.R.C.P. 54(b).[4] We agree that the plain language of C.R.C.P. 54(b) would initially seem to indicate that a judgment is not final until certified as such. However,

**3.** In addition to a final decision, collateral estoppel also requires that the issue decided in the prior adjudication is identical to the one presented in the current action, the party against whom the plea is asserted is a party or in privity with a party to the prior adjudication, and the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior adjudication. *Pomeroy v. Waitkus,* 183 Colo. 344, 350–51, 517 P.2d 396, 399 (1973). The only issue raised by respondent in this case is that there was no final decision and our review is accordingly limited to that issue only.

**4.** C.R.C.P. 54(b) provides:

(b) **Judgment Upon Multiple Claims or Involving Multiple Parties** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims, or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

C.R.C.P. 54(b). Pursuant to the plain words of the rule then, a judgment is not final until the trial court has found that there is no reason for delay and subsequently expressly ordered the entry of judgment. C.R.C.P. 54(b) permits the trial court to enter a final judgment upon one or more but less than all claims where more than one claim exists. *Hamm v. Twin Lakes Reservoir & Canal Co.,* 150 Colo. 447, 373 P.2d 525 (1962). Only if the judgment is certified as final can it be appealed. *See Blackburn v. Skinner,* 156 Colo. 41, 396 P.2d 968 (1964).

a review of cases from our and other jurisdictions involving collateral estoppel leads us to conclude that C.R.C.P. 54(b) certification is not required before a judgment can be given preclusive effect. Such a result, in our view, best comports both with the function of C.R.C.P. 54(b) and the principles of collateral estoppel.

The doctrine of collateral estoppel provides that a court's final decision on an issue actually litigated and decided is conclusive of that issue in any subsequent suit.[5] *Williamsen v. People,* 735 P.2d 176, 182 (Colo.1987); *Pomeroy v. Waitkus,* 183 Colo. 344, 350, 517 P.2d 396, 399 (1973). The doctrine protects litigants from the burden of relitigating the same issue and therefore promotes judicial economy by preventing needless litigation. *See People v. Hearty,* 644 P.2d 302, 312. In order for collateral estoppel to apply, the issue sought to be precluded must be identical to the issue actually litigated and necessarily decided at the prior proceeding, there must be a final judgment on the merits, the party against whom estoppel is sought must have been a party or in privity with a party to the prior proceeding, and the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Salida School Dist. R–32–J v. Morrison,* 732 P.2d 1160, 1163 (Colo.1987); *Industrial Comm'n v. Moffat County School Dist. RE No. 1,* 732 P.2d 616, 619–20 (Colo.1987); *Pomeroy v. Waitkus,* 183 Colo. 344, 350–51, 517 P.2d 396, 399.

While there is substantial Colorado case law discussing collateral estoppel, none directly addresses the relationship between collateral estoppel and C.R.C.P. 54(b) in the context of the final judgment requirement. The most instructive case comes from the court of appeals. In *Flournoy v. Sayles,* 37 Colo.App. 67, 544 P.2d 649 (1975), a child's parents brought a direct negligence claim against a school principal and respon-

deat superior claims against the school district superintendent and school district for the death of their child who was killed while crossing a street near his junior high school. Summary judgment was granted for the principal and superintendent. Neither of the judgments was appealed or certified as final under C.R.C.P. 54(b). The school district then moved for summary judgment, asserting that it could not be held liable under respondeat superior since its agents had been found not negligent. The trial court granted the motion and the parents appealed. The court of appeals affirmed, holding that because the cause of action against the school district was based on a theory of respondeat superior, and not on individual negligence, the unappealed dismissal of the individual defendants acted to bar the plaintiff's action against the district. *Flournoy,* 37 Colo.App. at 70, 544 P.2d at 652. Thus, *Flournoy,* although making no specific reference to C.R.C.P. 54(b), treated the entry of summary judgment in favor of the principal and superintendent as final for purposes of precluding the subsequent claim against the district even though the judgment was not certified.

*Flournoy* is the Colorado case most analogous to the dispute now before us. Although the court of appeals relied upon *Manka v. Martin,* 200 Colo. 260, 614 P.2d 875 (1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1354, 67 L.Ed.2d 338 (1981), and the respondents cite *Miller v. Lunnon,* 703 P.2d 640 (Colo.App.1985), neither of these cases is apposite. The court of appeals characterization of *Manka* as requiring a judgment to be certified under rule 54 before being given collateral estoppel effect is misguided. *Manka* held only that an uncertified judgment is not final for purposes of appellate review. It did not address the issue of finality for preclusive purposes. In *Manka,* we stated that "[b]ecause partial summary judgments in

---

**5.** Preclusion occurs under two theories: collateral estoppel (issue preclusion) and res judicata (claim preclusion). Issue preclusion prevents relitigation of a factual or legal matter that was previously litigated and decided. *Wright v. People,* 690 P.2d 1257 (Colo.1984). Claim preclu-

sion bars relitigation of claims or issues which were or could have been raised in a prior suit between the same parties or their privies. *CF & I Steel Corp. v. Charnes,* 637 P.2d 324 (Colo. 1981).

action Nos. 95403 and 95470 were not final judgments" since they had not been certified, "they are not *appealable.*" *Manka v. Martin,* 200 Colo. at 264, 614 P.2d at 878 (emphasis added). Because the issue before us is finality for purposes of preclusion, not appeal, *Manka* is not helpful.

In *Miller,* we held only that a "pending appeal did not suspend the operation of the otherwise final [judgment] which had not been suspended by a supersedeas order and was not subject to de novo review." *Miller v. Lunnon,* 703 P.2d at 643. The mere fact that a judgment was subject to future review on appeal did not automatically suspend its finality. In the present case, however, we are unconcerned with judgments subject to review. Here, the respondents waived their right to have the summary judgment order reviewed when they entered into the settlement agreement. Consequently, *Miller* is distinguishable.

Because of the lack of Colorado case law specifically addressing the relationship between rule 54(b) and collateral estoppel, we look to other jurisdictions treatment of this issue.[6] There is a substantial and developing body of federal case law holding that a judgment need not be certified as final pursuant to F.R.C.P. 54(b) or other comparable rules or statutes to be accorded collateral estoppel effect.

The most widely cited case is *Lummus Co. v. Commonwealth Oil Refining Co., Inc.,* 297 F.2d 80 (2d Cir.1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962), wherein Judge Friendly noted that "to borrow Mr. Justice Brandeis' famous phrase, 'final' ... is 'a word of many meanings,' ... the law of judgments does not use it in relation to conclusiveness, as 28 U.S.C. § 1291 [7] does, to mean only a judg-

ment 'which ends litigation ... and leaves nothing for the court to do but execute judgment.'" *Lummus,* 297 F.2d at 89 (citations omitted). Rather, the term "[f]inality in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Id.* The Second Circuit stated that the determination of whether a judgment could be considered final for collateral estoppel purposes depended upon "the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." *Id.* Thus, although the judgment in *Lummus* was not final in the sense of 28 U.S.C. § 1291, it was nevertheless accorded preclusive effect because the decision was not tentative, there was an adequate hearing, and there was ample opportunity for review.

The Second Circuit confirmed the reasoning of *Lummus* in *Zdanok v. Glidden Co., Durkee Famous Foods Div.,* 327 F.2d 944 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964), when it restated that collateral estoppel does not require a litigation-ending judgment. *Zdanok,* 327 F.2d at 955. The court held that final judgments for preclusive purposes include many dispositions which, though not final in the sense that the court need only execute judgment, have nevertheless been fully litigated. *Id.* To hold otherwise would, as another court put it, elevate form over substance. *Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1191 (5th Cir.), *reh'g denied,* 689 F.2d 190 (5th Cir.1982), *vacated on other grounds,* 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983). This theme was further developed in *Miller Brewing Co. v. Jos. Schlitz Brew-*

6. We look to the federal courts because there is a paucity of state cases addressing this issue. We note that C.R.C.P. 54(b) and F.R.C.P. 54(b) are identical and as such, federal law construing F.R.C.P. 54(b) is persuasive. *Harding Glass Co., Inc. v. Jones,* 640 P.2d 1123 (Colo.1982); *Moore & Co. v. Triangle Constr. & Dev. Co., Inc.,* 44 Colo.App. 499, 619 P.2d 80 (1980).

7. 28 U.S.C. § 1291 provides that:

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all *final decisions* of the district courts of the United States, ... except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title. (Emphasis added.)

*ing Co.,* 605 F.2d 990 (7th Cir.1979), *cert. denied,* 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980), when the Seventh Circuit held that a judgment is final for purposes of collateral estoppel if it is immune as a practical matter to reversal or amendment. *Id.* at 996. Once again, finality in the sense of 28 U.S.C. § 1291 was not required before a decision could be given collateral estoppel effect. *Id.*

The foregoing federal cases illustrate the relationship between preclusion and federal statutes other than F.R.C.P. 54(b) which require a "final judgment." It was not until *Alexander v. Chicago Park Dist.,* 773 F.2d 850 (7th Cir.1985), *cert. denied,* 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986), that the relationship between the final judgment requirement for res judicata and F.R.C.P. 54(b) purposes was specifically addressed.[8] The court held that although a judgment was not final under F.R.C.P. 54(b), it might nevertheless carry the requisite finality for res judicata purposes. *Id.* at 855. The court stated that although it was reluctant to deviate from the strict rule 54(b) requirements, it would do so where neither party was prejudiced by the lack of formality. *Id.* In so holding, the court made an important analytical distinction; it reasoned that although rule 54(b) certification was required before a judgment could be appealed, it was not

required before a judgment could be given preclusive effect.[9] *Id.* As support for the distinction the court cited *Lummus* with approval. *Accord O'Reilly v. Malon,* 747 F.2d 820 (1st Cir.1984) (judgment not certified under F.R.C.P. 54(b) accorded preclusive effect); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4434 (1981).

The holdings of the Second and Seventh Circuits were adopted by the American Law Institute in 1980 in the Restatement (Second) of Judgments (1982). Section 13 of the Restatement provides that:

The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion [10] (as distinguished from merger and bar), "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.

In comment g of section 13, the commentator states that withholding collateral estoppel effect until the judgment is final in the sense of certification

can involve hardship—either needless duplication of effort and expense in the second action to decide the same issue, or, alternatively, postponement of decision of the issue in the second action for a possibly lengthy period of time until

---

**8.** Because both res judicata and collateral estoppel require an entry of a final judgment, *People v. Hearty,* 644 P.2d 302 (Colo.1982), we find the decision in *Alexander,* although involving res judicata, instructive on the collateral estoppel issue presented in this case.

**9.** The court's distinction finds strong support in the Restatement (Second) of Judgments § 13 comment b (1982). According to comment b,

[t]he question whether a judgment is "final" also arises in the context of statutes providing for appellate review of "final decision" (as in 28 U.S.C. § 1291, "Final decision of district courts"), or "final judgments or decrees" (as in 28 U.S.C. § 1257, "State courts; appeal, certiorari"). It has often been suggested that finality for appellate review is the same as finality for purposes of res judicata, but that has probably never been quite true, and it is surely not true at present when considerable liberties are being taken with finality in the context of appeal in order to take care of various exigent situations in which prompt

review by the higher courts is thought necessary. The fact that a trial court order may be reviewable by interlocutory appeal, for example under 28 U.S.C. § 1292(b), does not necessarily mean that the matter resolved in the order should be treated as final for purposes of res judicata. A general working description of finality in the field of former adjudication will, however, resemble the older, traditional, strict formulation of the concept of finality for appellate review. Thus when res judicata is in question a judgment will ordinarily be considered final in respect to a claim (or a separable part of a claim, see Comment e below) if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement that may be consequent upon the particular kind of adjudication.

**10.** Issue preclusion refers to collateral estoppel, while claim preclusion refers to res judicata. *See supra* note 5 and accompanying text.

the first action has gone to a complete finish. In particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment.... Before doing so, the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion. The test of finality, however, is whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision.

In our view, the reasoning expressed in the Restatement and the Second and Seventh Circuits draws the proper distinction between a final judgment for purposes of collateral estoppel and that required by C.R.C.P. 54(b). We agree that certification is required before a case can be appealed. *See Blackburn v. Skinner*, 156 Colo. 41, 42, 396 P.2d 968, 969 (1964). This, however, does not invariably lead us to the same conclusion with regard to collateral estoppel. While collateral estoppel and C.R.C.P. 54(b) are each concerned with judicial economy, *see Salida School Dist. R–32–J v. Morrison*, 732 P.2d 1160, 1163 (Colo.1987), *Harding Glass Co. v. Jones*, 640 P.2d 1123, 1127 (Colo.1982), rule 54(b) is designed only to limit the administrative costs of appeals on single claims in multiple claim lawsuits. It is intended to discourage the piecemeal review of an action. *Harding Glass Co. v. Jones*, 640 P.2d at 1127. Collateral estoppel, on the other hand, is designed to limit multiple trials on the same claim. It is not concerned with whether a claim is properly postured for appeal. As such, the underlying purposes of the two are vastly different. Consequently, requiring C.R.C.P. 54(b) certifica-

tion for collateral estoppel purposes is unwarranted. Such a requirement is limited to the judgment's appealability, not its preclusive effect.

■ In order to be accorded preclusive effect, a judgment must be "sufficiently firm" in the sense that it was not tentative, the parties had an opportunity to be heard, and there was an opportunity for review. Restatement (Second) of Judgments § 13 (1983); *Lummus v. Commonwealth Oil Refining Co., Inc.*, 297 F.2d 80 (2d Cir. 1961). Applying this rule to the present case, we conclude that the summary judgment order entered in favor of Keeler should have been accorded preclusive effect. The granting of Keeler's motion for summary judgment was in no way tentative but was, as the district court stated, a dismissal with prejudice. *See Flournoy v. Sayles*, 37 Colo.App. 67, 544 P.2d 649 (1975). The respondents had ample opportunity to be heard. The record reveals that the respondents filed a brief in opposition to Keeler's motion for summary judgment and that the court held a lengthy proceeding on the motion during which respondents' counsel made an extensive argument opposing the motion. It therefore cannot be seriously argued that respondents were not heard. Finally, the entry of summary judgment originally was subject to review. The respondents, however, waived any right to such review when they entered into the settlement agreement.

Accordingly, we reverse the court of appeals determination of this issue.

### B.

■ We turn next to the issue of whether the summary judgment order entered in Keeler's favor merged into and was extinguished by the settlement agreement. The general rule is that a settlement agreement supersedes a judgment and, so long as the agreement exists, the judgment merges into it. *Valmont Indus., Inc. v. Yuma Mfg. Co.*, 50 F.R.D. 408, 411 (D.Colo.1970). The judgment is thereby extinguished, *Eagle Oil Co. v. Sinclair Prairie Oil Co.*, 105 F.2d 710, 713 (10th Cir.

 

1939), and the rights and liabilities of the parties to the agreement are measured by the agreement's terms. *Protective Closures Co. v. Clover Indus., Inc.,* 394 F.2d 809, 812 (2d Cir.1968); *see also Riordon v. Ferguson,* 147 F.2d 983, 986–87 (2d Cir. 1945). However, the agreement is conclusive only of matters which the parties intended to include. *See Trimble v. City & County of Denver,* 697 P.2d 716, 725 (Colo. 1985); *Coffee v. Inman,* 728 P.2d 376, 382–83 (Colo.App.1986). The parties can settle only one issue of a multi-issue claim if they so desire. *See Trimble; Coffee; see also City of Littleton v. Employers Fire Ins. Co.,* 169 Colo. 104, 113–14, 453 P.2d 810, 815 (1969).

 In the present case, Keeler's negligence was just one of several issues raised by the respondents. The trial court found in Keeler's favor regarding this issue. That part of the settlement agreement relating to the respondents' claim against Keeler does not in any way address the negligence issue. Rather, it speaks only of waiving any rights the respondents had to appeal the summary judgment order. Specifically, the agreement provided that the respondents waived their "rights to appeal the summary judgment on the claims against Dr. Forrest Keeler." [11] Not only is the agreement bare of any admission of liability by Keeler, but nowhere in it is the issue of Keeler's liability even raised. There is no evidence the parties contemplated that the issue of liability would be affected by the settlement agreement. *See Cross v. District Court,* 643 P.2d 39, 41 (Colo.1982). Because the portion of the agreement relating to Keeler pertained only to the appealability of the summary judgment order, it did not merge into and extinguish the court's order finding him not negligent. The respondents chose to litigate their claim against Keller, lost, and then waived their right to appeal. Upon waiving the right to appeal the motion for summary judgment, the judgment and its finding that Keeler was not negligent became final.

### C.

In sum, we find that the summary judgment order granted in Keeler's favor was a "final judgment" for purposes of collateral estoppel. Because the judgment did not merge into and become extinguished by the subsequent settlement agreement and the respondents waived their right to appeal, Carpenter could assert a collateral estoppel defense against the respondents' claims.

Accordingly, we reverse and return the case to the court of appeals with directions to reinstate the trial court's entry of summary judgment in favor of Carpenter.

---

**11.** The entire portion of the settlement agreement relating to the release of all defendants provides:

> 1. That it is in the best interests of the minor child, Kayla Young, to approve the partial settlement of the lawsuit entitled Kayla Young, a minor, by and through her parents and next friends, Charlotte Young and Carl Young; and Charlotte Young and Carl Young, individually, Plaintiffs, versus Stephen Carpenter, M.D.; James L. Pfeiff, M.D.; Forrest B. Keeler, M.D.; Colorado Permanente Medical Group, a Colorado Partnership; and Saint Joseph Hospital, Inc., a Colorado Corporation, Defendants, filed in the District Court in and for the City and County of Denver, State of Colorado, Civil Action No. 81 CV 487,

and that the following settlements are approved:

> (a) Settlement of the claims against Dr. James L. Pfeiff .. $ 60,000.00
> (b) Settlement of the claims against Colorado Permanente Medical Group ...... $ 10,000.00
> (c) Settlement of the claims against Saint Joseph Hospital and a waiver of the right to appeal the summary judgment on the claims against Dr. Forrest B. Keeler ................ $ 45,000.00
>
> TOTAL SETTLEMENT ..... $115,000.00