Mrs. Grace R. DREW
and
Mrs. Mildred R. Hawthorne, Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF SULPHITE AND PAPER MILL WORKERS, Defendant.

Civ. No. 1592–64.

United States District Court
District of Columbia.

May 26, 1965.

John Silard, Washington, D. C., for plaintiffs.

Leonard Braman, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

In this suit for the alleged breach of an oral contract of employment, one of the plaintiffs (Hawthorne) refused to answer certain questions upon the taking of her deposition. As a result, the defendant now moves the Court to compel said plaintiff to answer the questions propounded and to require the plaintiff to pay the reasonable expenses incurred in obtaining the requested order. In opposition to the motion, the plaintiff's principal contention is that the defendant is barred from pursuing the questions "under the doctrine precluding a party in civil litigation from benefitting by his own wrongful act."

A cursory review of certain facts is necessary to illuminate the issue raised by the plaintiff. One Brooks resigned as Research Director of the defendant in early 1961. He was replaced by McNiff, who was later, in early 1964, responsible for dismissing the plaintiffs from the defendant's employment. A suit for damages was commenced in July, 1964, alleging that the plaintiffs were wrongfully dismissed without cause. In its answer, the defendant alleged, inter alia, that the "plaintiffs were in fact dismissed from their employment for good cause." It was revealed in the deposition of the incumbant Director McNiff that the dismissal of plaintiff Hawthorne "for cause" was predicated upon her inadequate performance, poor attitude, lack of cooperation and lack of fidelity to her employer (defendant) (See Deposition of McNiff, pp. 64–67). It further appeared from

McNiff's deposition that the alleged disloyalty involved Hawthorne's allegiance to the past Director Brooks. (Id., 67–76)

Subsequent to McNiff's deposition, the defendant took the deposition of plaintiff Hawthorne and sought to inquire into certain incidents in the latter part of 1961 which related to her loyalty to the then new Director, McNiff. Having testified in a manner repudiating suggestions of disloyalty, plaintiff Hawthorne was confronted with a memorandum that she had written to the then ex-Director Brooks on the defendant's stationery. The letter was disparaging of McNiff and was accompanied by copies of various correspondence of the defendant.

The questions which plaintiff Hawthorne refused to answer concerned this memorandum. The refusal to answer was based upon the allegation that McNiff obtained the memorandum illegally by violating the privacy and integrity of the mails. The plaintiffs now urge the Court to apply an estoppel doctrine to preclude the defendant from benefitting from this wrong, by prohibiting inquiry related to the allegedly illegally intercepted memorandum.

The claim that the letter was wrongfully intercepted was engendered from McNiff's own testimony on deposition. He stated that one of his employees noticed a letter from the defendant union addressed to Mr. Brooks, the past director, mixed with other union mail in a mail bag located in the union office. Her suspicions aroused, that employee brought the letter to McNiff. The envelope was then opened, the contents examined and copied, and the envelope sent on its destination. The plaintiff contends that this conduct constitutes an interception from a mail depository in violation of 18 U.S.C. § 1702 (1964), and sufficiently supports Hawthorne's refusal to answer questions relating thereto.

■ The Court is not convinced, from the facts before it on the hearing of this motion, that a crime was committed. However, assuming, *arguendo*, that McNiff's testimony concerning the intercepted letter establishes a *prima facie* violation of a criminal statute, the Court nevertheless rejects the assertion that such conduct is a proper ground for refusing to answer questions upon deposition.

The Court's conclusion is limited to the facts here presented and is predicated upon several, independent grounds. First, no legal precedent is cited to support such an exclusionary rule. The plaintiff relies upon Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), but that case is inapposite. The Supreme Court there held that if the plaintiff could prove he was justifiably misled by the defendant into a good faith belief that his action could be commenced after the statutory period, the deceived party was entitled to a trial on the merits. Accordingly, the Court concluded, the lower courts erred in dismissing the case on the ground that the statute of limitations barred the action. The specific rationale of the decision was the traditional estoppel theory.[1] Glus presented an entirely different legal and factual situation than does the instant case. To sanction the wrong in Glus would have

1. "The principle is that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. * * * [T]he general doctrine is well understood and is applied * * * where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim." Glus v. Brooklyn Eastern District Terminal, 359 U.S. at 234, 79 S.Ct. 760, at 762, 3 L.Ed. 2d 770, quoting from Insurance Co. v. Wilkinson, 13 Wall. 222, 233, 20 L.Ed. 617 (1871).

precluded a truthful hearing on the merits of the claim, which was precisely the end the wrongful conduct intended to accomplish. In this case, however, the assumed wrong was not for such a purpose, nor would it have such an effect. To the contrary, it appears to shed light on the merits of the controversy. Furthermore, Glus did not involve an exclusionary rule. To the extent Glus balanced wrongful conduct by a private individual against the law's interest in a truthful hearing on the merits, it resolved the conflict in favor of the latter. A similar balance in this case compels rejection of the plaintiffs' contention. Finally, the instant case is unlike Glus in that the elements of estoppel are absent. There were no representations or conduct which were justifiably relied upon by the plaintiff. No advantage was taken which is now being used to defeat the ends of justice or to establish a dishonest claim.[2] A case more relevant than Glus is Calumet Broadcasting Corp. v. FCC, 82 U.S.App.D.C. 59, 160 F.2d 285 (1947), where it was held that phonograph records surreptitiously procured by a private party were not erroneously admitted into evidence.

 A second ground supporting the Court's decision herein is its belief that the policy considerations which underlie the exclusionary rule in criminal cases are less forceful in a civil proceeding.[3] The most obvious distinction is that the assumed wrongful conduct in this case was not undertaken with a view to furthering a claim in litigation. Accordingly, the desired deterrent effect which an exclusionary rule is designed to foster would be of dubious efficacy.[4]

 Thirdly, even assuming, *arguendo*, that an exclusionary rule prohibiting the use of wrongfully obtained evidence were applicable in this proceeding as in a criminal case, it appears that the questions here in issue would fall within the "impeachment exception" to that rule, Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); Tate v. United States, 109 U.S.App.D.C. 13, 283 F.2d 377 (1960). Walder and Tate permit the use of certain illegally obtained evidence for the limited purpose of impeachment. In the instant case, plaintiff Hawthorne was asked if she had ever made copies of correspondence or memoranda in addition to those prescribed by her boss, McNiff. She replied that she could not remember doing so. The private correspondence copied by McNiff was then marked for identification by the defendant's attorney who sought to use it to refresh Hawthorne's recollection and to impeach the above negative answer and her assertions of loyalty (See deposition of Hawthorne, pp. 20–29). It was at this point that plaintiff's objection was raised. Thus, the evidence allegedly wrongfully obtained was sought to be used for impeachment purposes; at least in the context now being considered.

 Finally, the Court would observe that in most cases, including this one, the better practice is for attorneys to note their objections, but permit their clients to answer questions—leaving resolution of the objection to pre-trial or trial. This approach conserves the parties or witnesses' time and money, as well as judicial resources, and expedites the trial of the lawsuit. Furthermore, the objections may become moot by disposition of the

---

2. See note 1, supra.

3. See generally, Comment, Mapp v. Ohio and Exclusion of Evidence Illegally Obtained by Private Parties, 72 Yale L.J. 1062–1075 (1963).

4. The exclusionary rule has recently been rejected in a factual situation much more

appropriate for its application than the instant case. In Sackler v. Sackler, 16 App.Div.2d 423, 229 N.Y.S.2d 61 (1962), a private party sought, and was permitted, to further his own civil claim with the use of evidence unlawfully obtained for the very purpose for which it was used.

case before trial or abandonment by the other party at the time of trial.

 Plaintiff also objected on the ground of relevancy, which is clearly proper within Rule 26. However, such an objection does not warrant a refusal to answer the questions; especially here where there was undoubtedly a color of relevancy in that the plaintiff's loyalty was in issue and the questions reflected upon her loyalty.

Accordingly, for each and all of the above reasons, it is by the Court this 26th day of May, 1965,

Ordered That the defendant's motion to compel plaintiff Hawthorne to answer certain questions upon the taking of her deposition is granted; and it is

Further ordered That the parties bear their own expenses in this proceeding.