563 P.2d 15 (1976)
Margaret ADAMS, Plaintiff-Appellant,
v.
John D. LEIDHOLDT et al., Defendants-Appellees.
No. 75-415.
Colorado Court of Appeals, Division III.
December 23, 1976.
Rehearing Denied February 24, 1977.
Certiorari Granted April 25, 1977.
*16 Walter L. Gerash, P. C., Denver, for plaintiff-appellant.
Yegge, Hall & Evans, Richard D. Hall, Denver, for defendant-appellant John D. Leidholdt.
Tilly & Graves, Ronald O. Sylling, Denver, for defendant-appellant Richert E. Quinn, Jr.
T. Raber Taylor, Denver, for defendant-appellant Sisters of Charity of Leavenworth.
RULAND, Judge.
In an action to recover damages for alleged medical malpractice, plaintiff appeals from a judgment granting motions for directed verdicts in favor of all defendants prior to submission of the case to a jury. We affirm in part and reverse in part.
Plaintiff's injury occurred following surgery to her hip and consisted of paralysis to that part of the peroneal nerve located below her left knee which controls muscles necessary to raise the foot and toes. The injury to the nerve rendered plaintiff unable *17 to use those muscles and resulted in a condition described as "drop foot." The paralysis is permanent and requires plaintiff to wear a metal brace on her left leg and foot in order to walk.
The injury occurred May 15 or 16, 1970, and the original complaint was filed May 11, 1972. The complaint alleged three claims for relief charging defendants Dr. John Leidholdt and St. Joseph's Hospital with negligence, failure to obtain informed consent for the surgery, and with liability pursuant to the doctrine of res ipsa loquitur. The complaint was amended on September 4, 1973, and the amended complaint added Dr. Richert E. Quinn, Jr., as a defendant but asserted only two claims against all defendants based upon negligence and the doctrine of res ipsa loquitur. All defendants denied that they were negligent, and Dr. Quinn affirmatively pled the statute of limitations. After all evidence was presented, plaintiff voluntarily dismissed her negligence claim, and the trial court granted a directed verdict as to the res ipsa loquitur claim.
The parties agree upon the following legal principles which govern this review. Only in a case where reasonable minds could reach but one conclusion may the issue of negligence be withdrawn from the jury and determined by the court pursuant to motion for directed verdict. Nettrour v. J.C. Penney Co., Inc., 146 Colo. 150, 360 P.2d 964 (1961). In reviewing the trial court's decision to grant a motion for directed verdict, we must construe the evidence and all legitimate inferences therefrom in a light most favorable to the party against whom the motion was granted. Hilzer v. MacDonald, 169 Colo. 230, 454 P.2d 928 (1969). Thus viewed, the record reflects the following sequence of events.
Plaintiff suffered from a severe case of osteoarthritis which primarily affected her left hip joint and which rendered her unable to walk without crutches. She was admitted to St. Joseph's Hospital on May 12, 1970, for a surgical procedure whereby the hip joint was replaced. The surgery was performed by Dr. Leidholdt on May 13, 1970, and the parties agree that the surgery was a complete success.
In the recovery room following the surgical procedure, plaintiff's left leg was placed in a traction device consisting of a metal frame with a canvas backing to support and immobilize the leg. As part of the procedure followed in using this device, an elastic bandage was wrapped around plaintiff's leg from her ankle to just below the knee.
Dr. Quinn was employed by St. Joseph's Hospital as a resident physician on the orthopedic ward and assisted Dr. Leidholdt in plaintiff's surgery. Following the surgery, post-operative care and orders relative thereto were discussed by the doctors and entered in the hospital records primarily by Dr. Quinn. While not specifically included in the post-operative orders, Dr. Quinn, the other resident physicians on the orthopedic ward, and the nurses knew or should have known that: The elastic bandage should not be wrapped too tightly or it could cause damage to the peroneal nerve; that traction device must be checked periodically in order to ascertain that plaintiff's leg was properly positioned or else the weight of the leg could itself cause peroneal nerve paralysis; and, the circulation in plaintiff's toes should be checked periodically.
On May 14, Dr. Leidholdt examined the plaintiff, found that the leg was properly positioned in the traction device, that her foot was moving well, and that she was otherwise recovering on schedule. Similar results were disclosed by Dr. Leidholdt's examination on May 15.
At some time during the day of May 15, a doctor plaintiff identified as Dr. Quinn rewrapped the elastic bandage. At some time during the evening of May 15, plaintiff experienced pain in the toes of her left foot and complained to a nurse or nurses on duty some six to eight times during the course of that evening. The only notation appearing on the hospital records made by a nurse reflects that plaintiff complained of pain in her left heel. During an examination by Dr. Leidholdt on the morning of May 16, he discovered the drop foot condition. Dr.
*18 Leidholdt made the following entry in the hospital records.
"Patient has a foot drop today. . .. Believe this resulting from positioning. Foot dorsiflexion was present post-operatively."
While Dr. Leidholdt indicated in the hospital records that he believed the drop foot condition resulted from positioning in the traction device, he testified at trial that he could not ascertain with certainty what caused the paralysis. He stated that the condition could also have resulted from such causes as wrapping the elastic bandage too tightly, post-operative swelling, tension due to the lengthening of the leg in the surgical procedure, or perhaps other unspecified causes. Another doctor testified as to other physical infirmities which can cause this type of paralysis, such as diabetes, the effects of chronic alcoholism, or knife wounds, but there is no evidence in the record from which a jury could infer that any of these causes was responsible for plaintiff's condition. The consensus of medical opinion was that the paralysis resulted from some type of pressure on the nerve occurring on May 15 or 16.
While an aerosol can was discovered in plaintiff's bed near her leg on May 13 or 14, counsel for plaintiff conceded in argument to this court that the presence of that can was not responsible for plaintiff's condition inasmuch as the paralysis did not occur until the evening of May 15 or on May 16.

I. The Claim Against Dr. Quinn
While the trial court granted Dr. Quinn's motion for directed verdict on the theory that plaintiff had failed in her evidence to meet the requirements of the doctrine of res ipsa loquitur, Dr. Quinn also contends that the dismissal must be affirmed based upon the statute of limitations then in effect, namely, 1967 Perm.Supp., C.R.S.1963, 87-1-6. We affirm the dismissal of this claim based upon the statute.
Plaintiff asserts that since Dr. Quinn has not cross-appealed from the trial court's ruling, he may not urge the statute of limitations. While Dr. Quinn has not filed a cross-appeal, he is entitled to raise any legal theory in support of the trial court's judgment. City of Delta v. Thompson, Colo.App., 548 P.2d 1292 (1975).
Plaintiff, in effect, admits that she was fully cognizant of her drop foot condition and that she was aware that it was a significant injury probably as early as May 16, 1970, but for certain within one month thereafter. Moreover, she testified at trial that she believed "right away" that Dr. Quinn was responsible for her condition by rewrapping the elastic bandage on her left leg too tightly.
Under these circumstances, we view Valenzuela v. Mercy Hospital, 34 Colo.App. 5, 521 P.2d 1287 (1974), as controlling. In that case, as here, the applicable statute of limitations provided:
"No person shall be permitted to maintain an action . . . in tort . . . to recover damages from . . . any person licensed . . . to practice medicine . . . on account of the alleged negligence of such person . . . unless such action be instituted within two years after such cause of action accrued."
There, as here, the plaintiff was aware of her injury and knew or should have known that any alleged negligence occurred on or before the date of that injury. Therefore, since the amended complaint against Dr. Quinn was filed more than two years after plaintiff became aware of his alleged negligence, the claim against him is barred by the statute of limitations.

II. The Claim Against Dr. Leidholdt
The plaintiff's burden in asserting a claim for negligence under the doctrine of res ipsa loquitur is set forth in Hilzer v. MacDonald, supra:
"Before the doctrine can be applied, the event must be one which would ordinarily not occur in the absence of someone's negligence. It must be caused by an agency or instrumentality within the exclusive control of the defendant. Further, it must not have been due to any *19 voluntary action or contribution on the part of plaintiff. And the evidence as to the true explanation of the event must be more readily accessible to the defendant than to the plaintiff."
We conclude that plaintiff did not sustain this burden as against Dr. Leidholdt because she totally failed to demonstrate that her injury resulted from any agency or instrumentality within the exclusive control of Dr. Leidholdt.
The parties agree that nothing occurred during surgery to injure the peroneal nerve. There is no basis in the record from which a jury could infer that Dr. Leidholdt failed in any way to meet the standard of care applicable to a physician in his specialty, in prescribing post-operative orders, or in his post-operative care of plaintiff. It may not be inferred that Dr. Leidholdt was negligent merely because an injury occurred following the surgery. Smith v. Curran, 28 Colo.App. 358, 472 P.2d 769 (1970).
Nevertheless, plaintiff contends that Dr. Leidholdt should be vicariously liable for her injury as the "captain of the ship." While the so-called "captain of the ship" doctrine has in effect been applied in this jurisdiction to impose liability upon a physician for the negligence of hospital employees under his direct control and supervision, see, e.g., Beadles v. Metayka, 135 Colo. 366, 311 P.2d 711 (1957), we conclude that it has no application under the circumstances of this case. Rather, the rule announced in Bernardi v. Community Hospital Assn., 166 Colo. 280, 443 P.2d 708 (1968), applies here.
Plaintiff relies on two alternative factors as supporting her claim; namely negligent rewrapping of the elastic bandage, or failure to insure that her leg was properly positioned in the traction device. However, both Dr. Quinn and the nurses assigned to the orthopedic ward were selected, hired, and paid by St. Joseph's and not Dr. Leidholdt. It is apparent that both Dr. Quinn and the nurses knew or should have known of the need to maintain proper positioning of plaintiff's leg and not to rewrap the elastic bandage too tightly and that Dr. Leidholdt was not present when the elastic bandage was rewrapped on May 15. A staff physician such as Dr. Leidholdt is not liable for failure of the hospital employees to execute reasonable post-operative procedures for the treatment of his patients, and he may assume that the hospital's employees are competent to follow reasonable orders unless he has knowledge to the contrary. Bernardi v. Community Hospital Assn., supra. See also Massey v. Heine, 497 S.W.2d 564 (Ky.App.1973); Muller v. Likoff, 225 Pa.Super. 111, 310 A.2d 303 (1973). In the present case, there is no evidence or legitimate inference therefrom to support a conclusion that Dr. Leidholdt was aware that any of the employees in the orthopedic ward were incompetent. Thus, the "captain of the ship" doctrine is not applicable under the circumstances of this case.

III. The Claim Against St. Joseph's Hospital
We first discuss St. Joseph's contention that voluntary dismissal by plaintiff of her first claim based on negligence at the close of all evidence necessitates a judgment of dismissal as to the second claim, which alleged the doctrine of res ipsa loquitur. In support of this contention, it is urged that dismissal of the first claim constitutes a concession by plaintiff that she was unable to prove negligence or causation, and that, therefore, no claim for relief remained in the complaint because res ipsa loquitur is a rule of evidence and not a substantive cause of action. We find this argument unpersuasive.
While we recognize that the doctrine of res ipsa loquitur does not constitute a substantive cause of action, St. Lukes Hospital v. Schmaltz, 188 Colo. 353, 534 P.2d 781 (1975), a complaint may not be considered fatally defective merely because it recites a rule of evidence deemed applicable to the controversy before the court. See Lyons v. Hoffman, 31 Colo.App. 306, 502 P.2d 980 (1972). The second claim incorporated by reference the allegations of negligence contained in the first claim and *20 added an assertion that the doctrine of res ipsa loquitur was applicable. Allegations of specific negligence in a complaint do not preclude a plaintiff from relying upon the doctrine of res ipsa loquitur. Weiss v. Axler, 137 Colo. 544, 328 P.2d 88 (1958). By the same reasoning, a pleading which, as here, sets forth alleged acts of negligence and then pleads reliance upon the doctrine of res ipsa loquitur sets forth a viable claim for relief.
We have considered St. Joseph's other contentions relative to the effect of plaintiff's dismissal of the first claim as mandating dismissal of the second claim and find them to be without merit.
Relying upon McGee v. Heim, 146 Colo. 533, 362 P.2d 193 (1961), and Schmaltz v. St. Lukes Hospital, 33 Colo.App. 351, 521 P.2d 787 (1974), reversed on other grounds, St. Lukes Hospital v. Schmaltz, supra, St. Joseph's contends that two equally plausible inferences can be drawn from the evidence as to the likelihood of negligence being or not being the cause of plaintiff's injury and that, therefore, the doctrine of res ipsa loquitur does not apply. Contrary to the case before us, in each of the cited cases the plaintiff proved only the occurrence of injury. Hence, those cases are inapplicable here.
We note first that, in light of Dr. Leidholdt's testimony that he has performed approximately 400 similar hip replacement procedures and has only noted three or four cases of temporary peroneal nerve damage, paralysis of the peroneal nerve as a consequence of this type of surgery must be considered a rare occurrence. Evidence that nerve damage rarely occurs together with evidence of at least two causative factors which may have caused the injuries complained of and which would have resulted from negligence on the part of hospital employees requires submission of the issue of negligence to the jury. See Fraser v. Sprague, 270 Cal.App.2d 736, 76 Cal.Rptr. 37 (1969). While other factors could have caused the injuries, it is not necessary for plaintiff to eliminate all explanatory possibilities other than that of St. Joseph's negligence in order to have the issue of negligence submitted to the jury. See Douglas v. Bussabarger, 73 Wash.2d 476, 438 P.2d 829 (1968); see also 1 D. Louisell & H. Williams, Medical Malpractice ¶ 14.04. Hence, plaintiff is entitled to the procedural advantages offered by the doctrine of res ipsa loquitur.
We find St. Joseph's contention relative to dismissal of this appeal by reason of alleged defects in the cost bond to be without merit.
The judgment dismissing plaintiff's claims against Dr. Leidholdt and Dr. Quinn is affirmed. The judgment dismissing plaintiff's claims against St. Joseph's Hospital is reversed, and the cause is remanded with directions to reinstate plaintiff's second claim for relief and for a new trial relative thereto.
SILVERSTEIN, C. J., and BERMAN, J., concur.