Arthur B. BOYD

v.

UNIVERSITY OF MARYLAND MEDICAL SYSTEM, et al.

Civil Action No. WMN–96–3105.

United States District Court, D. Maryland.

May 2, 1997.

144

John Lewis Walker, Landover, MD, for Arthur B. Boyd.

Peter Keith, Gallagher, Evelius and Jones, Baltimore, MD, for University of Maryland Medical System.

Douglas Connah, Venable, Baetjer and Howard, Baltimore, MD, for Baltimore Sun Co.

Kevin Taylor Baine, Williams & Connolly, Washington, DC, for Washington Post Co.

Mary R. Craig, Doyle and Craig, Baltimore, MD, for Journal Newspaper.

## MEMORANDUM

GRIMM, United States Magistrate Judge.

By Order dated April 15, 1997, the Honorable William M. Nickerson referred to the undersigned all discovery disputes in connection with the above-captioned case. Presently pending before me is the University of Maryland Medical System's ("UMMS") motion to compel deposition testimony and request for sanctions. Paper No. 38. For the reasons stated below, I will grant the motion. I will also order counsel for the plaintiff to show cause why sanctions should not be imposed against him for instructing his client not to answer the questions which are the subject of this motion.

## DISCUSSION

Despite the changes to Fed.R.Civ.P. 30(d)(1) which went into effect in the fall of 1993, and the adoption of the Discovery Guidelines by this Court in September 1995, the issue which presents itself in this case— the appropriateness of counsel instructing a deponent not to answer questions during a deposition—has proven to be a recurring problem which sometimes appears to defy efforts to clarify the law. In part, the problem is understandable, although not excusable. Fed.R.Civ.P. 30(c) mandates that examination and cross-examination during a deposition may proceed as permitted at trial under provisions of the Federal Rules of Evidence. The setting for a deposition mimics trial, with one important difference: a court reporter is present, testimony is taken under oath, counsel are present to zealously represent their clients, yet when the inevitable occurs, a difference of opinion regarding the propriety of a question, there is no judge to rule on the dispute. Instead, counsel are expected to rise above their roles as advocates for a particular party, and, acting as officers of the court, resolve their differences on the spot without outside intervention. As difficult as it is to do, and recognizing at the outset that reasonable minds can differ in good faith about many discovery issues, it is nonetheless required that counsel behave appropriately during deposition discovery. There simply is no more aggravating action than a lawyer improperly instructing a deponent not to answer a question. This tactic frequently is used to frustrate new or inexperienced lawyers, and thwart legitimate discovery by more seasoned ones. As will next be discussed, there are very few circumstances in which an instruction not to answer a deposition question is appropriate, and the continued use of this tactic in light of the existing rules, guidelines and case law is a dangerous, and potentially expensive, endeavor.

It has been the law in this circuit for 20 years that lawyers may not instruct witnesses not to answer questions during a deposition unless to assert a privilege. *Ralston Purina Co. v. McFarland,* 550 F.2d 967 (4th Cir.1977).[1] Initially, many practitioners

1. The Fourth Circuit is not alone in this position. *See, e.g., Hall v. Clifton Precision,* 150 F.R.D. 525, 531 (E.D.Pa.1993) ("Counsel shall not direct or request that a witness not answer a question, unless that counsel has objected to the question on the ground that the answer is protected by a

were critical of this decision, because it was perceived as making lawyers defending a deposition powerless against abusive tactics by an examining attorney, such as repeatedly asking the same question, or asking argumentative questions or questions seeking information not relevant to the litigation, but of a highly personal nature. However, for such abusive tactics, Fed R. Civ. P. 30(d)(3) has always offered an available, although somewhat drastic, refuge.[2]

The 1993 amendments to the Federal Rules of Civil Procedure codified the rule articulated in the Ralston Purina case.[3] In addition to permitting an attorney to instruct a deponent not to answer a question in order to preserve a privileged communication, the new amendments allowed a lawyer or deponent who had the foresight to anticipate a problem in deposition discovery to seek a protective order in advance of the deposition.[4] This procedure offered counsel and deponents the option of allowing the court, in advance of the deposition, to define the boundaries of the permitted discovery. Thereafter, if a question was asked during the deposition which trespassed into an area proscribed by the Court's order, an instruction not to answer would be appropriate. Often the mere effort of requesting the Court's involvement was sufficient to produce agreement among counsel tailoring the scope of the deposition discovery to avoid objectional areas. In addition, Fed.R.Civ.P. 30(d)(3) continued to preserve the ability of an attorney to redress abusive deposition tactics by unilaterally terminating the deposition and filing a motion with the Court for an order to discontinue the objectionable questioning.

Despite the 1993 changes to Rule 30(d)(1), many lawyers felt that they were still at a

---

privilege or a limitation on evidence directed by the court."); *First Tennessee Bank v. Federal Deposit Insurance Corp.*, 108 F.R.D. 640 (E.D.Tenn. 1985) ("It is well-settled that counsel should never instruct a witness not to answer a question during a deposition unless the question seeks privileged information or unless counsel wishes to adjourn the deposition for the purpose of seeking a protective order from what he or she believes is annoying, embarrassing, oppressive or bad faith conduct by adverse counsel."); *International Union of Elec. v. Westinghouse Elec. Corp.*, 91 F.R.D. 277, 279–80 (D.D.C.1981) (finding that except in rare circumstances where it can be shown that some serious harm would result from answering a deposition question, an objection must be made, and an answer given); *Coates v. Johnson & Johnson*, 85 F.R.D. 731, 733 (N.D.Ill. 1980) ("Despite plaintiff's protestations to the contrary, the general rule in this district is that, absent a claim of privilege, it is improper for counsel at a deposition to instruct a client not to answer. If counsel objects to a question, he should state his objection for the record and then allow the question to be answered subject to his objection."); *Lloyd v. Cessna Aircraft Co.*, 74 F.R.D. 518 (E.D.Tenn.1977) (noting that it is "wholly improper" for an attorney to direct a deponent not to answer a question, and that the proper action is to object to the question, and let the objection be stated for the record); *Preyer v. United States Lines, Inc.*, 64 F.R.D. 430 (E.D.Pa. 1973) (finding that except when privileged information would be disclosed, an attorney may not instruct a deponent not to answer a deposition question, and that the answer should be taken, subject to the objection); *Shapiro v. Freeman*, 38 F.R.D. 308 (S.D.N.Y.1965) (An attorney has no right to impose silence or instruct a deposition witness not to answer a question. It is the province of the court, not counsel, to rule on objections to questions); *Drew v. International Brotherhood of Sulphite & Paper Mill Workers*, 37 F.R.D. 446, 449 (D.D.C.1965) ("Finally, the Court would observe that in most cases, including this one, the better practice is for attorneys to note their objections [to deposition questions], but permit their clients to answer questions—leaving resolution of the objection to pre-trial or trial. This approach conserves the parties or witness, time and money, as well as judicial resources, and expedites the trial of the lawsuit."). See generally 8A Charles A. Wright, Arthur R. Miller, 7 Richard L. Marcus, *Federal Practice and Procedure* § 2113 (1994).

2. Fed.R.Civ.P. 30(d)(3) permits an attorney to unilaterally suspend the taking of a deposition in order to seek a court order terminating or limiting the scope of the deposition, upon a showing that the examination was being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass or oppress the deponent or party.

3. Fed.R.Civ.P. 30(d)(1) provides, in relevant part, "[a] party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph [30(d)] (3)."

4. Fed.R.Civ.P. 26(c) gives the court broad discretion to tailor appropriate relief to prevent abusive or improper discovery. Among the tools available to the court is to order that certain matters not be inquired into, or that the scope of disclosure or discovery be limited to certain matters. Fed.R.Civ.P. 26(c)(4).

disadvantage when attempting to protect a client from improper deposition questioning. Filing a motion for a protective order in advance of a deposition to obtain a limiting order, it was thought, was too expensive to be warranted in many instances, and there was no guarantee that the motion would be resolved as soon as desired to allow the deposition schedule to proceed promptly. Some lawyers also found that there was a vast difference among judges in their willingness to issue advance rulings on discovery disputes. Similarly, many practitioners thought that unilaterally terminating a deposition pursuant to Fed.R.Civ.P. 30(d)(3) was a risky proposition, particularly given the requirement of Fed.R.Civ.P. 37(a)(4) that a court "shall" impose sanctions for a violation of the discovery rules, unless it finds that sanctions would be unjust. Finally, some practitioners expressed the concern that the very limited circumstances under which instructions not to answer were appropriate still could subject counsel who "played by the rules" to an unfair disadvantage when opposing an attorney who sought to take advantage of this limitation by repeatedly asking the same question or asking irrelevant or argumentative questions.[5] In response to these understandable concerns, and in an effort to provide more particular and uniform guidance, in September 1995, this Court adopted nine Discovery Guidelines. The purpose of the Guidelines is to "facilitate the just, speedy, and inexpensive conduct of discovery in all civil cases before this court." Local Discovery Guidelines, Guideline 1(a) (D.Md.1995). Although the Guidelines are not mandatory, compliance is considered by the Court in resolving discovery disputes, including whether sanctions should be imposed pursuant to Fed.R.Civ.P. 37. Local Discovery Guidelines, Guideline 1(b) (D.Md. 1995). In addition, many of the scheduling orders issued in cases pending before this

Court refer counsel to the Guidelines and encourage familiarity with them. Indeed, the scheduling order in this case did so.[6]

Discovery Guidelines four through six address deposition practice. Guideline 5 specifically controls the issues relevant to this case, namely deposition questioning, objections and procedure. Guideline 5(d), for example, provides that "[i]t is presumptively improper to instruct a witness not to answer a question during the taking of a deposition unless under the circumstances permitted by Fed. R.Civ.P. 30(d)(1)." Local Discovery Guidelines, Guideline 5(d) (D.Md.1995). However, it quickly adds that:

> it is also presumptively improper to ask questions clearly beyond the scope of discovery permitted by Fed.R.Civ.P. 26(b)(1), particularly of a personal nature, and continuing to do so after an objection shall be evidence that the deposition is being conducted in bad faith, or in such a manner as unreasonably to annoy, embarrass or oppress the deponent or party, which is prohibited by Fed.R.Civ.P. 30(d)(3).

*Id.* The Guidelines also address the improper practice of repeatedly asking the same question to a deponent who has already answered fully. Guideline 5(c) provides:

> An attorney should not repeatedly ask the same or substantially identical question of a deponent if the question already has been asked and fully and responsively answered by the deponent. Upon objection by counsel for the deponent, or by the deponent if unrepresented, it is presumptively improper to continue to ask the same or substantially identical question of a witness unless the previous answer was evasive or incomplete.

Local Discovery Guidelines, Guideline 5(c) (D.Md.1995). This Guideline was intended to strike a balance between an attorney's right to continue an inquiry where a deponent's

---

**5.** One critic of the 1993 revisions to Fed.R.Civ.P. 30(d) stated the concern as follows:

What happens is your opponent may ask your witness the same question dozens of ways to get the answer they want ... Before [the amendment to rule 30(d)] you would have objected, saying something like, 'we've been over this ground. Let's move on.' Now they can ignore you. So you're helpless to protect

your witness under the new rule, unless you want to file a very expensive motion under [Rule 30(d)(3)].

*Deposition Misconduct Rule 30(d) Draws Fire,* Federal Discovery News, Dec. 1994, at 4.

**6.** Scheduling order dated December 19, 1996, at ¶ 2.e.

response is evasive or incomplete[7] with the defending attorney's legitimate desire to prevent the deposing attorney from employing the abusive tactic of repeatedly asking the same, or substantially same, question, despite having received a complete and non-evasive answer.

■ Against this backdrop, the following points may be stated with regard to the issue of whether an attorney properly may instruct a deponent not to answer a question during a deposition: (1) pursuant to Fed. R.Civ.P. 26(b)(1), a deponent may be questioned about any matter which is relevant to the litigation, which is not privileged, and the fact that the information sought may not ultimately be admissible does not mean that it is not discoverable; (2) pursuant to Fed. R.Civ.P. 30(d)(1) and Guideline 5(d), any time that a lawyer instructs a deponent not to answer a question except as authorized by Rules 30(d)(1) or 30(d)(3) the instruction is presumptively improper. Whether such a presumptively improper instruction warrants the imposition of sanctions pursuant to Fed. R.Civ.P. 37, however, will depend upon the Court's assessment of the following five factors: (1) the importance of the requested information to the issues in the litigation (i.e., is the solicited information collateral or marginally relevant, or alternatively, is it material to a claim or defense); (2) the number of times the attorney instructed the witness not to answer (i.e., was the instruction an isolated incident or is there a pattern of disruptive instructions); (3) whether the question which prompted the instruction not to answer was proper and unobjectionable;[8] (4) whether the instruction not to answer appears to have been made in a sincere, although misguided, effort to preserve a colorably valid objection, or, instead, for purposes of disrupting the deposition; and (5) whether the attorney instructing the deponent not to answer had advance notice of the likelihood that the deposing attorney would initiate questions in an area considered objectionable, and whether the attorney sought a protective order pursuant to Fed.R.Civ.P. 26(c). It must be emphasized that any instruction not to answer a deposition question which does not comply with Fed. R. Civ. P. 30(d)(1) and (3) and Guideline 5(d) is presumptively improper. A Court asked to impose sanctions for such improper behavior may determine, by evaluating the above factors, that sanctions are not appropriate. However, these instances are few and far between.

### The Issue in this Case

■ The issue which is now ripe for resolution deals with a series of deposition questions asked by counsel for UMMS to the plaintiff, Dr. Boyd, which drew instructions not to answer from the plaintiff's counsel. The subject matter of the questions focused on the identity of any states which had refused to give Boyd a license to practice medicine because of his conviction for attempting to bribe the officials who administered .the medical licensing examination in Michigan to give him examination materials; whether Boyd had ever been convicted of a crime;

---

7. Fed.R.Civ.P. 37(a)(3) provides, *inter alia,* that an evasive or incomplete answer to a discovery question is deemed to be a failure to answer.

8. In this regard, Fed.R.Civ.P. 32(d)(3)(B) requires attorneys to make seasonable objections to the form of questions which are asked, or else they are waived. The most frequent grounds for objecting to the form of a question are: (1) the question is too broad or calls for an excessive narrative answer, (2) the question is compound, (3) the question has been asked and responsively and completely answered (*see* Guideline 5(d)), (4) the question calls for conjecture, speculation or judgment of veracity, (5) the question is ambiguous, imprecise, unintelligible or calls for a vague answer, (6) the question is argumentative, abusive or contains improper characterization, (7) the question assumes as true facts in dispute or not in evidence, (8) the question misquotes a witness, earlier testimony, (9) the question calls for an opinion from a witness not qualified to give one, and (10) the question is leading under circumstances where leading questions would not be permitted by Fed.R.Evid. 611(c). 1 Michael H. Graham, *Handbook of Federal Evidence* H 611.15–611.22 (4th ed.1996) (as to numbers 1–8 above).

Because Fed.R.Civ.P. 30(d)(1) and Discovery Guideline 5(d) do not permit an attorney to instruct a deponent not to answer a question merely because it is objectionable as to form, to do so is presumptively improper. However, in determining whether or not to impose sanctions against an attorney for doing so, the court may consider as one factor whether the question which prompted the instruction not to answer was objectionable or not.

and whether he had ever offered a person money to get the medical licensing examination results. The basis of the instruction not to answer was the belief by plaintiff's counsel that the information sought was not discoverable because it pertained to plea discussions and related matters, and thus, in his view, the facts were inadmissible under Fed. R.Evid. 410.

As I have already ruled in a memorandum and order issued in this case on April 24, 1997, the key to determining whether information is discoverable under Fed.R.Civ.P. 26(b)(1) is relevance and lack of privilege, not ultimate admissibility at trial. Boyd's attorney did not claim the existence of a privilege to support the instructions not to answer. The only issue, therefore, is whether the questions posed sought information which was relevant. In this regard, the definition of relevance provided in Fed.R.Evid. 401 is instructive. Evidence is relevant if it has *any tendency* to make more likely, or less likely, any fact that is of consequence to the litigation. To determine whether the above inquiry by counsel for UMMS sought relevant information, we must look at the pleadings, which frame the issues for trial.[9]

The essence of the cause of action asserted by Boyd against UMMS is that he was defamed by false publications allegedly made by UMMS to the effect that Boyd had deceived UMMS in listing his licensing status in his application for a three year training fellowship (Complaint, ¶ 12; Amended Complaint, ¶ 12); that Boyd lacked the required licensing credentials (*Id.* at ¶ 13); that Boyd had "hoodwinked" UMMS officials about his qualifications (*Id.* at ¶¶ 14–15); and that, despite repeated inquiries by UMMS for details about his medical licensure status, Boyd assured the hospital that he was qualified for licensure, but in fact was not (*Id.* at ¶ 17).

In addition to the issues raised in Boyd's complaint and amended complaint, UMMS filed a counterclaim against Boyd (Paper No. 7) which asserted that Boyd had engaged in fraud or misrepresentation in connection with statements he made to UMMS about his credentials, including the failure to disclose: his arrest and prosecution in 1985 for attempting to bribe medical licensing officials; the fact that regulatory action had been initiated against him in Ohio based on a finding that he lacked good moral character, and barring him from practicing medicine in that state; as well as his repeated failures to obtain a passing grade on the FLEX medical licensing examination. Paper no. 7 at pages 5–6.

With these issues in mind, it does not require Napoleonic insight to conclude that the questions posed to Boyd which his counsel instructed him not to answer were highly relevant to the issues raised in the complaint, amended complaint and counterclaim. In addition, the answers to the questions could well lead to the discovery of facts which could be used to impeach Boyd's credibility at trial. *See* Fed.R.Evid. 608, 609 and 611(b). Accordingly, because no privilege was asserted by Boyd's counsel, and because there had been no effort by Boyd's counsel to seek a protective order in advance of the deposition, despite his knowledge that there was pending before the Court a motion to compel interrogatory answers propounded by UMMS to Boyd regarding the same general facts,[10] his instructions not to answer the questions posed by UMMS were in clear violation of Fed.R.Civ.P. 30(d)(1) and Discovery Guideline 5(d). Because any issue regarding the admissibility of the facts sought by UMMS does not prevent their discovery, I will order that the questions identified in the motion to compel filed by UMMS be answered, and that UMMS be given reason-

9. In this regard, it is noted that Fed.R.Civ.P. 26(b)(1) makes it clear that a party may discover facts relevant to *any* claim or defense in the litigation, regardless of whether it applies to that party or not. Thus, UMMS may discover facts relevant not only to its counterclaim against Boyd, and his claims against UMMS, but also regarding any claims or defenses relevant to the causes of action asserted against the other parties as well.

10. *See* Paper no. 38 at 2, where Boyd's counsel commented, in response to one of the questions posed by UMMS "[b]ecause that information, it's the same thing that you filed a motion on. I'll wait until the court gives us a ruling on it, because I don't believe that's information that is discoverable."

able latitude to ask follow up questions of Boyd regarding his answers to the questions. The only remaining question for me to decide is whether sanctions are appropriate under Fed.R.Civ.P. 37(a)(4)(A).

### Sanctions

■ As noted above, the mere fact that Boyd's counsel improperly instructed him not to answer deposition questions does not mean that this Court is required to impose sanctions. Whether sanctions should be imposed will depend on my evaluation of the five factors identified above.

The first factor is the importance to the issues in the litigation of the facts which were not disclosed because of the instruction not to answer. In this case, those facts go to the very heart of Boyd's defamation claim against UMMS, and that party's counter-claim for fraud/misrepresentation against Boyd. Thus, the facts sought were of central importance to the litigation, which makes the efforts by Boyd's counsel to block their discovery particularly troublesome. The second factor is the number of times the counsel instructed the deponent not to answer. In this regard, I have been provided with only four pages of the deposition transcript, and note that UMMS does not contend that in any other area of its examination of Boyd his counsel instructed him not to answer. I assume, therefore, that we are faced with limited instances of counsel instructing his client not to answer. The third factor is whether the questions posed were objectionable. It is clear to me that they were properly framed, and in one instance in which Boyd's attorney objected to the form of a question, UMMS' counsel willingly rephrased it. Accordingly, there was nothing objectionable about the form of the questions asked. The fourth factor is whether the instruction not to answer was for purposes of disrupting the deposition. Having read the exchange, it does not seem to me that Boyd's attorney intended to act unprofessionally or sought to disrupt the deposition. Instead, he was attempting to preserve an objection, erroneous though it was, that the facts UMMS sought were not discoverable. The final factor is whether Boyd's counsel was on notice of the likelihood that UMMS would initiate an in-

quiry into an area objectionable to Boyd, and whether he sought a protective order. The exchange between counsel for UMMS and Boyd's counsel unmistakably shows that Boyd's attorney knew that there had been a similar dispute regarding the interrogatories propound by UMMS, and that UMMS' motion to compel was in fact pending. Yet, a review of the Court file reveals no motion for protective order filed by Boyd's attorney before the deposition.

In weighing the foregoing factors, I do not believe that sanctions should be imposed against Boyd or his attorney in the form of the costs incurred by UMMS in filing its motion to compel. I am inclined to order that Boyd's counsel pay the costs which will be incurred by UMMS in reconvening the deposition to ask the questions I have ordered to be answered and any reasonable follow up questions. In this regard, counsel for UMMS shall submit to me, and serve upon Boyd's counsel, a statement of these costs, to include the fee to the court reporter, the transcript of the deposition, and the attorney's fees for UMMS related to the actual taking of the deposition, but not any pre-deposition preparation. Counsel for Boyd will then have 14 days in which to show cause why he should not be required to pay these costs as a sanction for the violations I have found. Further, to insure that the next deposition of Boyd does not produce the same results, I am ordering that the parties schedule the deposition for a time when I am available in chambers to be contacted by telephone if there is a dispute during the taking of the deposition.

### CONCLUSION

For the above stated reasons, UMMS' motion to compel and request for sanctions is GRANTED. A separate order shall issue.

### *ORDER*

For the reasons stated in the foregoing Memorandum, it is this 2nd day of May, 1997 **HEREBY ORDERED:**

1. That defendant UMMS' Motion to Compel is **GRANTED** and, in a continued deposition, Mr. Boyd is to respond to the

questions identified in UMMS' motion to compel as well as any reasonable follow up questions;

2. That the continued deposition of Mr. Boyd is to be scheduled at a time when I am available by telephone to rule on any disputes that may arise during the taking of the deposition; and

3. That within fourteen (14) days of the taking of the deposition as directed in ¶ 1 above, counsel for UMMS shall submit to me, and serve upon Boyd's counsel, a statement of the costs it incurred to take the continued deposition of Mr. Boyd, including the court reporter's fee, transcription fees and UMMS' attorney's fees related to the actual taking of the deposition, but not any pre-deposition preparation. Counsel for Boyd will then have fourteen (14) days in which to show cause why he should not be required to pay these costs as a sanction for the violations I have found.

