**Janell L. LISCIO and Robert Liscio,**
**Plaintiffs–Appellants,**

v.

**Ronald C. PINSON, M.D.; David P. Fisher, M.D.; and Rocky Mountain Orthopedic Associates, P.C., Defendants–Appellees.**

No. 02CA0124.

Colorado Court of Appeals,
Div. III.

June 19, 2003.

Certiorari Denied Feb. 9, 2004.

Leventhal, Brown & Puga, P.C., Jim Leventhal, Anthony Viorst, Denver, Colorado, for Plaintiffs–Appellants.

Montgomery Little & McGrew, P.C., Robert N. Spencer, Englewood, Colorado, for Defendant–Appellee Ronald C. Pinson, M.D.

Johnson, McConaty & Sargent, P.C., Craig A. Sargent, Bradley G. Robinson, Glendale, Colorado, for Defendant–Appellee David P. Fisher, M.D.

No Appearance for Defendant–Appellee Rocky Mountain Orthopedic Associates, P.C.

Opinion by Judge DAILEY.

In this medical malpractice action, plaintiffs, Janell L. and Robert Liscio, appeal the judgment entered upon a jury verdict in favor of defendants, Ronald C. Pinson, M.D., David P. Fisher, M.D, and Rocky Mountain Orthopedic Associates, P.C. Plaintiffs also appeal an order imposing sanctions for abuse of deposition procedures. We affirm.

Defendants are orthopedic surgeons who, on October 31, 1997, performed surgery to reconstruct a torn anterior cruciate ligament (ACL) in Janell Liscio's left knee. Following surgery, the screw holding the ACL graft in place detached, requiring defendants to perform a "revision" knee surgery on November 28, 1997.

Within a month of the second surgery, Janell Liscio met with defendant Dr. Pinson on four separate occasions, complaining of pain in her leg. Dr. Pinson referred Mrs. Liscio to other specialists, and one eventually determined she suffered an injury to the sartorial, or main, branch of her saphenous nerve and had a condition known as reflex sympathetic dystrophy.

On November 24, 1999, plaintiffs filed this action, alleging that defendants negligently performed the second surgery, causing damage to Mrs. Liscio's saphenous nerve. Mrs. Liscio's husband, Robert, asserted a claim for loss of consortium. In their answers, defendants denied that they negligently caused any injury or loss of consortium.

In May 2001, plaintiffs filed a motion to amend their complaint to add two additional claims of negligence relating to the first surgery. Upon defendants' objection, the trial court summarily denied plaintiffs' motion.

A prominent issue at trial was whether Mrs. Liscio suffered an injury to the infrapatellar, as opposed to the sartorial, branch of the saphenous nerve. Experts on both sides opined that the infrapatellar branch of the nerve is routinely (and thus, not negligently) sacrificed by doctors during this type of surgery.

After an eleven-day trial, the jury found that defendants had not been negligent.

### I. Motion to Amend Complaint

Plaintiffs contend that the trial court erred in denying their motion to amend the complaint. We disagree.

Under C.R.C.P. 15(a), parties may amend their pleadings only by leave of court after responsive pleadings have been filed; however, "leave shall be freely given when justice so requires." C.R.C.P. 15(a) reflects

a liberal policy of allowing amendment, and trial courts are encouraged to look favorably on requests to amend pleadings. *Super Valu Stores, Inc. v. Dist. Court,* 906 P.2d 72, 77 (Colo.1995).

A trial court may deny leave to amend on grounds of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in the pleadings via prior amendments, undue prejudice to the opposing party, and futility of amendment. *Benton v. Adams,* 56 P.3d 81, 86 (Colo.2002); *Sandoval v. Archdiocese of Denver,* 8 P.3d 598, 605 (Colo.App.2000).

Here, we are unable to determine the precise basis of the trial court's ruling. Nonetheless, we conclude that plaintiffs' motion was properly denied on grounds of futility of amendment. *See Davis v. Paolino,* 21 P.3d 870, 873 (Colo.App.2001)("if a proposed amendment to the complaint would be futile, reversal is not required").

"An amendment is futile, if, for example, 'it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.' " *Benton v. Adams, supra,* 56 P.3d at 86–87 (quoting 3 J.W. Moore, et al., *Moore's Federal Practice* § 15.15[3], at 15–48 (3d ed.1999)). We review de novo the issue presented in this case, namely, whether the amendment would be futile because it would not survive a motion to dismiss. *See Benton v. Adams, supra,* 56 P.3d at 86.

Here, plaintiffs' motion requested leave to file two new claims of negligence related to the first operation. Plaintiffs' motion was filed, however, three and a half years after the second operation. Defendants opposed plaintiffs' motion, arguing that plaintiffs' new claims were barred by the applicable two-year statute of limitations set forth in § 13–80–102.5(1), C.R.S.2002.

In determining when a claim accrues, for purposes of applying § 13–80–102.5, we look to § 13–80–108(1), C.R.S.2002, which provides, in pertinent part, that "a cause of action for injury to person ... shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence."

In a medical malpractice case, a claim accrues when a plaintiff has knowledge of facts which would put a reasonable person on notice of the nature and extent of an injury and that the injury was caused by the wrongful conduct of another. A plaintiff need not know the specific acts of negligence committed by the defendant or the details of the evidence necessary to prove the claim. "It is enough that the claimant knew, or may reasonably be charged with knowledge of, sufficient facts to be aware that a claim existed more than two years before it was filed." *Mastro v. Brodie,* 682 P.2d 1162, 1169 (Colo.1984); *see also Sandoval v. Archdiocese of Denver, supra,* 8 P.3d at 604 ("The limitation period does not begin to run until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the existence of facts forming the basis of a claim for relief.").

Although whether a statute of limitations bars a claim is ordinarily a question of fact, *Owens v. Brochner,* 172 Colo. 525, 529, 474 P.2d 603, 605 (1970), it may, in appropriate cases, be decided as a matter of law. *See Adams v. Leidholdt,* 38 Colo.App. 463, 468, 563 P.2d 15, 18 (1976), *aff'd,* 195 Colo. 450, 579 P.2d 618 (1978).

Here, Mrs. Liscio was told that a second operation was required because a bone graft implanted in the first operation had pulled apart. And during her deposition she twice testified that, by the time of the second operation, she believed that defendants had done something negligently in the first operation. She also testified that within a week of the second surgery, she experienced excruciating pain in her left leg.

Under these circumstances, we conclude that reasonable people could not disagree that, within a week of the second operation, plaintiffs were "aware of [the] injury and knew or should have known that any alleged negligence occurred on or before the date of that injury." *See Adams v. Leidholdt, supra.* Because the amended complaint was filed well beyond two years after this time,

the new claims would be barred by the statute of limitations, absent the application of C.R.C.P. 15(c).

C.R.C.P. 15(c) provides that a claim asserted in an amended pleading relates back to the date of the original complaint when it arises out of the same conduct, transaction, or occurrence alleged in the original pleading.

Because notice is the essence of C.R.C.P. 15(c), the issue is whether, when viewed from the perspective of a reasonably prudent party, a defendant ought to have anticipated or expected that "other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question." *See United States v. Bell,* 724 P.2d 631, 638 (Colo.1986)(quoting 6 Wright & Miller, *Federal Practice and Procedure: Civil* § 1497, at 498–99 (1971)).

A defendant will not be held to have anticipated or expected a new claim which arises from events other than those included in the original complaint. *See Allen Homesite Group v. Colo. Water Quality Control Comm'n,* 19 P.3d 32, 34 (Colo.App.2000); *see also Peters v. Smuggler–Durant Mining Corp.,* 930 P.2d 575, 581 (Colo.1997)("Where an 'amended complaint attempts to add a new legal theory which is unsupported by the factual claims raised in the original complaint, the proposed claim arises from new and distinct conduct, transactions, or occurrences not found in the original complaint.' " (quoting 27A *Federal Procedure Pleadings and Motions* § 62:335 (Lawyer's ed.1996)).

Here, plaintiffs' original complaint set forth several claims of relief, each specifically linked to the November 28, 1997 surgery. Plaintiffs' amended complaint alleged defendants were negligent in performing the October 31, 1997 surgery and in failing to properly secure the ACL graft at that time, which required Mrs. Liscio to undergo further surgery resulting in "an increase in her injuries and damages."

Plaintiffs' new claims alleged defendants' liability based upon specific conduct and events that were separate and distinct from that set forth in the original complaint. Thus, under C.R.C.P. 15(c), plaintiffs' new claims could not relate back to date of the original complaint.

Because the new claims were barred by the two-year statute of limitations, we conclude that the amended complaint would have been futile. Hence, we find no error in the trial court's denial of leave to amend the complaint.

## II. Expert Testimony

Plaintiffs also contend the trial court erred in precluding their expert from testifying that defendants negligently or otherwise improperly performed the first surgery. Plaintiffs argue that the expert's opinion with respect to the first surgery qualified as res gestae evidence and was otherwise admissible under CRE 705. We are not persuaded.

Res gestae evidence provides the jury with a full and complete understanding of the events surrounding the incident at issue. Even assuming it embraces opinion evidence, res gestae evidence is admissible only if it is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice. *See* CRE 401, 403; *People v. Quintana,* 882 P.2d 1366, 1373–74 (Colo.1994).

Under CRE 705, an expert is permitted on direct examination to disclose the bases of his or her opinion. *See People v. Masters,* 33 P.3d 1191, 1206 (Colo.App.2001), *aff'd,* 58 P.3d 979 (Colo.2002). However, even this type of evidence may be excluded under CRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See Vialpando v. People,* 727 P.2d 1090, 1095 (Colo.1986).

A trial court has broad discretion to determine the probative value and prejudicial impact of evidence, *E–470 Pub. Highway Auth. v. 455 Co.,* 3 P.3d 18, 23 (Colo.2000), and to determine whether evidence should be excluded because it would confuse the issues or mislead the jury. *Schultz v. Wells,* 13 P.3d 846, 852 (Colo.App.2000).

"To say that a court has discretion ... means that the court is not bound to

decide an issue one way or another," but, rather, may choose from amongst a range of reasonable options. *See Buckmiller v. Safeway Stores, Inc.,* 727 P.2d 1112, 1115 (Colo. 1986). Thus, we will not disturb, as an abuse of discretion, a trial court's ruling unless it was manifestly arbitrary, unreasonable, or unfair. *Hock v. N.Y. Life Ins. Co.,* 876 P.2d 1242, 1251 (Colo.1994).

█ We perceive no abuse of the trial court's discretion here, particularly in light of its denial of plaintiffs' motion to amend the complaint. In this context, the admission of evidence that defendants were negligent in the first operation would have been unfairly prejudicial to defendants and may well have misled or confused the jury regarding the proper and only basis upon which liability could be imposed in this case, namely the second operation.

### III. Deposition Testimony

Next, plaintiffs contend the trial court erred in precluding them from impeaching one of the defendants with inconsistent testimony in his deposition. Again, we disagree.

█ A trial court's evidentiary ruling will be upheld on appeal unless it was manifestly arbitrary, unreasonable, or unfair. *See People v. Garcia,* 17 P.3d 820, 828 (Colo.App. 2000)(use of inconsistent statements for impeachment purposes).

Under C.R.C.P. 32(a)(2), "any part or all of a deposition, so far as admissible under the rules of evidence," may be used against a party-deponent "for any purpose." Here, plaintiffs offered Dr. Fisher's deposition for the purpose of impeaching his trial testimony.

█ Under CRE 613, 'a witness may be impeached with his or her prior inconsistent statements. "Although an inconsistency need not amount to a patent contradiction, there must be a material variance between the witness' testimony and the prior statement or at least the omission of a significant detail which it would have been natural to mention in the prior statement." *Williams v. Dist. Court,* 700 P.2d 549, 557 (Colo.1985). Also, the inconsistency must be sufficiently probative to avoid exclusion under CRE 403

on grounds of confusion of issues, misleading the jury, or causing an undue waste of time. *See People v. Saiz,* 32 P.3d 441, 446 (Colo.2001)(discussing the admissibility of prior inconsistent statement evidence under CRE 613 and § 16–10–201, C.R.S.2002).

Here Dr. Fisher testified at trial that: (1) he did not think "there was an injury to the saphenous nerve during the [second] procedure"; and (2) to a reasonable medical probability, the sartorial branch of the saphenous nerve had not been injured, cut, transected, compressed, or squeezed in any manner during the second surgery.

On each occasion, plaintiffs sought to impeach Dr. Fisher with that part of his deposition where he appears to have acknowledged, as part a convoluted dialogue, that something more likely than not occurred during the second surgery to cause Mrs. Liscio's pain problems. The trial court denied plaintiffs' requests to impeach Dr. Fisher with this testimony.

█ No abuse of the trial court's discretion is evident here. Plaintiffs wanted to contradict Dr. Fisher's testimony concerning nerve damage. But Dr. Fisher's acknowledgment in the deposition appears to have concerned not nerve damage, but a more general topic, pain. Even if Dr. Fisher's acknowledgment could somehow be interpreted as reaching the issue of nerve damage, such an interpretation would have been somewhat misleading. Elsewhere in the deposition, clear questions were asked, and Dr. Fisher was unequivocal, as he was at trial, in his testimony that Mrs. Liscio suffered no nerve damage as a result of the second surgery.

Dr. Fisher's deposition testimony, then, was excludable, either because it was not at material variance with his trial testimony or because it was, at best, only marginally relevant and was potentially misleading and confusing to the jury.

Consequently, reversal is not warranted on this ground.

### IV. Informed Consent

Plaintiffs also contend that reversal is required because the trial court allowed defen-

dants to cross-examine Mrs. Liscio and later comment about an informed consent document. We find no reversible error.

■ Evidence pertaining to a patient's informed consent may be irrelevant and potentially unfairly prejudicial to the patient in cases where the patient sues a physician solely on the theory of negligent medical treatment. *See Waller v. Aggarwal*, 116 Ohio App.3d 355, 357–58, 688 N.E.2d 274, 275 (1996)(evidence may suggest that patient can and did consent to the risk of negligent medical treatment).

■ Here, however, defendants inquired of Mrs. Liscio only after plaintiffs had asked Dr. Pinson whether a patient's signing a consent form relieved a doctor of the obligation to properly perform surgery or precluded the patient from bringing suit.

■ We discern no error here because plaintiffs' inquiries opened the door to defendants' inquiries. *See Itin v. Ungar*, 17 P.3d 129, 132 n. 4 (Colo.2000)("The concept of 'opening the door' represents an effort by courts to prevent one party from creating a misleading impression through the selective presentation of facts by allowing the other party to explain or contradict that impression through evidence that might otherwise be inadmissible.").

Even if error occurred, reversal would not be warranted. *See Rojhani v. Meagher*, 22 P.3d 554, 557 (Colo.App.2000)(error in the admission or exclusion of evidence is harmless if it does not substantially influence the outcome of the case).

Here, the trial lasted eleven days. The challenged events consisted of several questions and one comment in closing argument. Defendants' questions and comment would not naturally require the jury to infer that plaintiffs assumed the risk of their negligence. And plaintiffs had previously extracted an acknowledgement to the contrary when they questioned Dr. Pinson.

Given the issues in the case, the small part defendants' questions and comment played in the course of trial, and plaintiffs' placing the informed consent topic in proper perspective, we are not persuaded that any error here substantially influenced the outcome of the case.

Plaintiffs' reliance on *Waller* is misplaced. In *Waller*, the Ohio Court of Appeals reversed a judgment in favor of a physician defendant not only because the informed consent issue was pervasive throughout trial, but also because the trial court endorsed informed consent as a defense to a claim of negligent medical treatment. These circumstances are readily distinguishable from those of the present case.

## V. Sanctions

Finally, plaintiffs contest the trial court's denial of their motion for protective order and the imposition of a $500 sanction against them. We are not persuaded.

Defendants deposed as one of their witnesses Mrs. Liscio's former treating physician. The deposition took place in Montrose, and plaintiffs' counsel appeared by telephone. Plaintiffs had not endorsed this witness as an expert under C.R.C.P. 26(a)(2). When defendants asked the witness to express an opinion concerning defendants' exercise of care during the surgery, plaintiffs' counsel objected, instructed the witness not to answer the question, and indicated that he would seek a protective order. Defendants desisted from any further inquiry along those lines.

Ten days later, plaintiffs sought a protective order. In the meantime, defendants had also sought a protective order and sanctions for plaintiffs' alleged unjustified interruption of the deposition.

The trial court denied plaintiffs' request for a protective order, granted defendants' request for a protective order, and imposed a $500 sanction on plaintiffs for effectively suspending a part of the deposition instead of simply noting their objection for the court to address later.

■ Decisions whether to grant a protective order or to award sanctions in connection with the discovery process are committed to the discretion of the trial court, and, as such, they will not be disturbed on appeal absent an abuse of discretion. *See Steiner v. Minn. Life Ins. Co.*, 71 P.3d 1017, —— (Colo. App., 2002)(*cert. granted* May 27, 2003)(protective orders); *Koscove v. Bolte*, 30 P.3d

784, 788 (Colo.App.2001)(discovery sanctions).

We note that plaintiffs' objection to defendants' particular line of inquiry was well-founded. *See* C.R.C.P. 26(b)(4)(A) ("Except to the extent otherwise stipulated by the parties or ordered by the court, no discovery, including depositions, concerning either the identity or the opinion of experts shall be conducted until after the disclosures required by subsection (a)(2) of this Rule."); *cf. Patel v. Gayes*, 984 F.2d 214, 217 (7th Cir.1993)(absent endorsement as expert, treating physician could not relate opinion about facts of which he had no personal knowledge).

However, a valid objection is not, in and of itself, ground for instructing a witness not to answer and suspending part of a deposition.

Under C.R.C.P. 30(d)(1), a party may instruct a witness not to answer a question during a deposition "only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion pursuant to subsection (d)(3) of this Rule." And under C.R.C.P. 30(d)(3), a party is entitled to suspend a deposition for "the time necessary to make a motion for an order" to stop or limit a deposition "being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party."

Here, plaintiffs alleged that defendants questioned the witness in bad faith and in an unduly oppressive and burdensome manner. Specifically, plaintiffs contended that defendants had neither endorsed the witness as an expert nor notified plaintiffs that they wished to question him as an expert.

However, defendants' failure to do so is not the type of conduct warranting a C.R.C.P. 30(d)(3) protective order. *See Kwik Way Stores, Inc. v. Caldwell*, 745 P.2d 672, 677 (Colo.1987)(" 'Bad faith' ... connotes conduct which ... amounts to a flagrant disregard or dereliction of one's discovery obligations."); *Boyd v. Univ. of Md. Med. Sys.*, 173 F.R.D. 143, 145 (D.Md.1997)(federal rule, identical to C.R.C.P. 30(d)(3), designed to remedy "abusive" deposition tactics "by an examining attorney, such as repeatedly asking the same question, or asking argumentative questions or questions seeking information not relevant to the litigation, but of a highly personal nature"); *see also In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 619 (D.Nev.1998)("it is not the embarrassment or annoyance which may be caused by unfavorable answers that is the criteria of [Fed.R.Civ.P.] 30(d)(3)," but "the 'manner' in which the interrogation is conducted that is grounds for refusing to proceed").

Thus, not only were plaintiffs not entitled to a protective order, but they also lacked substantial justification for interrupting the deposition to seek one. Accordingly, we perceive no abuse of the court's discretion in either denying their request for protective order or imposing sanctions. *See* C.R.C.P. 30(d)(3), 37(a)(4) (sanctions can be imposed unless, as pertinent here, actions were "substantially justified"); *cf. Eurpac Serv. Inc. v. Republic Acceptance Corp.*, 37 P.3d 447, 453 (Colo.App.2000)(for purposes of attorney fees statute, § 13–17–102, C.R.S.2002, a matter lacks substantial justification if, among other things, its "proponent can present no rational argument based on the evidence or law in its support").

The judgment and order are affirmed.

Judge MARQUEZ and Judge ROY concur.